Mark S. Middlemas (USB No. 9252)
Tom Cook (USB No. 5846)
LUNDBERG & ASSOCIATES, PC
3269 South Main Street, Suite 100
Salt Lake City, UT 84115
(801) 263-3400
(801) 263-6513 (fax)
ECFmailDistGroup@Lundbergfirm.com

Attorneys for DB RR LLC
L&A Case No. 18.72362.3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
Central Division

| | |
|---|---|
| In re: | Bankruptcy No. 19-20181 JTM |
| Kraig Anthony Munzert *dba KJM Investments LLC dba Hearthstone Management Services LLC*, | (a Chapter 13 case) |
| | Filed Electronically |
| Debtor. | |

## MOTION OF DB RR LLC FOR TERMINATION OF THE AUTOMATIC STAY OR FOR DETERMINATION THAT NO STAY IN EFFECT AS TO THE PROPERTY

Pursuant to 11 U.S.C. §362(d), Bankruptcy Rules 4001 and 9014 and Local Rules 4001-1 and 9013-1, DB RR LLC ("Creditor"), a secured creditor of the above-referenced debtor, moves the Court to terminate the automatic stay, or in the alternative, for a determination that no stay is in effect as to the property located at 8061 South Allen Street, Midvale, in Salt Lake County, Utah 84047. Statebridge Company, LLC presently services this loan. Creditor represents as follows:

1.      On January 11, 2019, the debtor filed a *pro se* petition commencing a case under Chapter 13, Title 11, United States Code. In addition, the *pro se* debtor claimed he was "doing business as" KJM Investments, LLC. KJM Investments, LLC is separate entity and active Utah limited liability company. A true and correct Utah business search result is attached and marked as **Exhibit A**.

2.      On or about January 31, 2018, KJM Investments, LLC a Utah limited liability company, executed and delivered to US Title Insurance Agency, LLC, as trustee for the benefit of Black Square Real Estate, Inc., as beneficiary, a certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture Filing (the "Deed") to secure the performance by the debtor of the obligations under a certain Secured Promissory Note (the "Note") and Loan Agreement (the "Agreement") were executed and delivered for valuable consideration to Lender on or about January 31, 2018. Copies of the Deed, Note and Agreement are attached as **Exhibits B, C and D**.  The loan will mature on February 1, 2019. See, Ex. D at ¶ 2.2.

3.      Creditor's motion seeks an order of the Court terminating the automatic stay with respect to property (the "Property") in which the debtor claims an interest, said Property being located at 8061 South Allen Street, Midvale, in Salt Lake County, Utah 84047, more particularly described as:

> Lot 24, BECKSTEAD SUBDIVISION, according to the official plat thereof, on file and of record in the office of the Salt Lake County Recorder.

> Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property.

4.      Creditor acquired the beneficial interest in the Deed, Note and Agreement by an assignment recorded August 9, 2018, a copy of which is attached as **Exhibit E**. Kraig Munzert

transferred his title interest into the Property by Warranty Deed recorded February 15, 2018 to

KJM Investments, LLC. A true and correct copy of the Warranty Deed is attached and marked as

**Exhibit F**.

5.　　The *pro se* debtor has not filed his Chapter 13 Plan, nor has he filed his

Statements of Financial Affairs.

## CAUSE FOR RELIEF PURSUANT TO 11 U.S.C. 362(d)(1)-- LACK OF PAYMENT OR ADEQUATE PROTECTION

6.　　The obligation evidenced by the Deed, Note and Agreement is in default. Prior to

the filing of this *pro se* Chapter 13 case, Creditor did not receive the June 1, 2018 to January 1,

2019 payments due under the terms of the lending agreements.  Pursuant to the terms of the Loan

Agreement, the *pro se* debtor was also required to pay all accrued interest on the loan each

month, with the first payment due on March 1, 2018 and continuing on the first day of each

month thereafter through February 1, 2019. The loan itself will mature on February 1, 2019.

See, Ex. D at ¶ 2.2.

7.　　Creditor has not received any post-petition payments. The *pro se* debtor has failed

to otherwise provide Creditor with adequate protection of its interest in the Property or provide

for payment of the arrears, or the maturing loan through a confirmable Chapter 13 plan.

8.　　The *pro se* debtor's failure to make the payments due to Creditor, or to otherwise

provide for payment of the maturing loan, constitutes cause to terminate the automatic stay.

9.　　The automatic stay provided under 11 U.S.C. § 362(a) should be terminated as to

Creditor, and its successors and assigns, and the Creditor permitted to proceed, pursuant to

applicable non-bankruptcy law, to exercise all of its legal remedies and rights, including any

right of assessment of reasonable fees and costs as provided by contract or statute, against the

Property.

## CAUSE FOR RELIEF PURSUANT TO 11 U.S.C. 362(d)(1)-- DEFAULT FOR OCCUPANCY

10.    The *pro se* debtor has defaulted under the terms of the lending agreements by occupying the Property, or by permitting a third person to occupy the Property.

11.    The Property is secured by a loan made for business purposes only, is not a consumer loan, and the secured Property may not be used or occupied for residential purposes by the borrower or any other person. See, Ex. D at ¶ 3.23. Further, the borrower may not permit any other person to occupy the Property.  See, Ex. D at ¶ 4.10.

12.    Upon inspection, and upon information and belief, the Property is occupied by Kraig Munzert, who  listed the Property as his home address in his Chapter 13 petition, and by a third party and former title interest holder: Mary Munzert.

13.    The occupation of the Property for residential purposes by the *pro se* debtor and Mary Munzert, even if temporarily, constitutes a material breach in the security agreement, and constitutes cause to terminate the automatic stay.

## NO STAY IS IN EFFECT AS TO THE PROPERTY

14.    In the alternative to termination of the stay, Creditor requests the court make a determination as to whether the automatic stay is in effect as to the Property.

15.    As of the date of filing,  the *pro se* debtor, Kraig Munzert, had no title interest in the Property, nor was he a borrower under the terms of the lending agreements. See, Exs. B-D & F. Kraig Munzert is a manager of the limited liability company that currently owns the Property, but he does not have direct legal interest that would make the Property "property of the estate" under 11 U.S.C. § 541 in his personal Chapter 13 case, and consequently the automatic stay

-4-

would not extend to and protect the Property under 11 U.S.C. § 362(a). See, Ex. A & F.

16.     Creditor submits that the Property is not property of the estate subject to the automatic stay created by the *pro se* debtor's Chapter 13 filing, and requests a determination that no stay is in effect as to the Property.

## WAIVER OF FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a)(3)

17.     Because of the ongoing occupation of the Property the *pro se* debtor and other persons in violation of the commercial lending agreements, Creditor requests the court waive the 14-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3).

## CONCLUSION

Based on the *pro se* debtor's material defaults under the terms of the lending agreements, Creditor requests the court immediately terminate the automatic stay, to the extent one exists, against the Property, or in the alternative, make a finding that the Property is not property of the estate, and therefore no stay took effect as to the Property upon the filing of the debtor's *pro se* Chapter 13 petition,

DATED: January 17, 2019.

LUNDBERG & ASSOCIATES, PC


By: /s/Mark S. Middlemas
Mark S. Middlemas
Attorneys for Creditor

Exhibit "A"

# KJM INVESTMENTS LLC

Update this Business

**Entity Number:** 9380764-0160
**Company Type:** LLC - Domestic
**Address:** 35 W CENTER ST # 444 MIDVALE, UT 84047
**State of Origin:**
**Registered Agent:** KENT JOSEPH MUNZERT
**Registered Agent Address:**
35 W CENTER ST NO 444
MIDVALE, UT 84047

View Management Team

Purchase Certificate of Existence

Status: Active

**Status:** Active ● *as of 11/15/2017*
**Renew By:** 04/30/2019
**Status Description:** Current
The "Current" status represents that a renewal has been filed, within the most recent
renewal period, with the Division of Corporations and Commercial Code.
**Employment Verification:** Not Registered with Verify Utah

History

View Filed Documents

**Registration Date:** 04/17/2015
**Last Renewed:** N/A

Additional Information

**NAICS Code:** 5313 **NAICS Title:** 5313-Activities Related to Real Estate

<< Back to Search Results

Search by:  | Business Name | Number | Executive Name | Search Hints

Business Name:

Exhibit "B"

12717354
2/15/2018 1:30:00 PM $34.00
Book - 10647 Pg - 5261-5273
ADAM GARDINER
Recorder, Salt Lake County, UT
US TITLE
BY: eCASH, DEPUTY - EF 13 P.

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Black Square Real Estate, Inc.
P.O. Box 3390
Salt Lake City, Utah 84110

*THIS SPACE FOR RECORDER'S USE ONLY*

**DEED OF TRUST, SECURITY AGREEMENT,
ASSIGNMENT OF RENTS AND LEASES,
AND FIXTURE FILING**

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION

(Additional recording fees apply)

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Black Square Real Estate, Inc.
P.O. Box 3390
Salt Lake City, Utah 84110

This document has been recorded
electronically. Please see the attached copy
to view the County Recorder's stamp as it
now appears in the public record

Submitted by: US Title Insurance Agency

*THIS SPACE FOR RECORDER'S USE ONLY*

### DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES, AND FIXTURE FILING

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION

(Additional recording fees apply)

## DEED OF TRUST, SECURITY AGREEMENT,
## ASSIGNMENT OF RENTS AND LEASES, AND FIXTURE FILING

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES, AND FIXTURE FILING (this "Deed of Trust") is made and entered into effective as of January 31, 2018, by and between KJM Investments, LLC, a Utah limited liability company ("Borrower"), with an address of 35 West Center Street, #444, Midvale, Utah 84047, as trustor; US Title Insurance Agency, LLC ("Trustee") with an address of 14884 Heritagecrest Way, Suite C, Bluffdale, Utah 84065, as trustee; and Black Square Real Estate, Inc., a Delaware corporation ("Lender"), with an address of 807 East South Temple, Suite 200, Salt Lake City, Utah 84102, as beneficiary.

### RECITALS

A.      Lender and Borrower have entered into that certain Loan Agreement (the "Loan Agreement") and Borrower has executed and delivered to Lender that certain Secured Promissory Note (the "Note"), each dated January 31, 2018, pursuant to which Lender has agreed to loan to Borrower a principal amount of up to One Hundred Seventy Nine Thousand and 00/100 Dollars ($179,000.00) (the "Loan"). All capitalized terms used herein without definition shall have the meanings given to such terms in the Loan Agreement.

B.      Pursuant to the Loan Agreement, Borrower has agreed to grant Trustee, in trust and for the benefit of Lender, this Deed of Trust securing the Loan Agreement, the Note and the other Secured Obligations (as defined in Section 1.4 hereof).

NOW, THEREFORE, in consideration of the premises and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower hereby warrants, represents, covenants and agrees as follows:

### ARTICLE I
#### Granting Clauses

Section 1.1      Grant of Real Estate Security.      Borrower hereby irrevocably GRANTS, BARGAINS, SELLS, MORTGAGES, WARRANTS, TRANSFERS, CONVEYS, ASSIGNS, SETS OVER AND PLEDGES TO TRUSTEE, IN TRUST FOR THE BENEFIT OF LENDER, WITH POWER OF SALE, AND GRANTS TO LENDER A SECURITY INTEREST IN, all of the following described property (collectively, the "Property"):

(a)      The real property located in the City of Midvale, County of Salt Lake, State of Utah, described on Exhibit A, attached hereto and incorporated herein, and all and singular tenements, hereditaments and appurtenances thereto, together with all right, title and interest of Borrower in all easements, rights-of-way, gores or strips of land, surface waters, ground waters, watercourses, mineral interests and subsurface rights, alleys, streets and sidewalks, whether now owned or hereafter acquired, either in law or in equity, adjacent or appurtenant to or adjoining such real property (the "Land");

(b)      Any and all buildings and improvements now or hereafter erected or located on the Land, including all right, title and interest of Borrower in and to all fixtures, attachments, appliances, equipment, machinery and other articles attached to such buildings and improvements (the "Improvements");

- 1 -

(c)     All right, title and interest of Borrower in and to all tangible personal property now owned or hereafter acquired by Borrower and now or at any time hereafter located on the Land or within the Improvements and used in connection therewith, including all building materials stored on the Land, all machinery, motors, elevators, fittings, radiators, awnings, shades, screens, all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air conditioning and sprinkler equipment, all furniture, furnishings, equipment and other personal property owned by Borrower and used in connection with the operation of the Property, and all renewals and replacements thereof (the "Personal Property"), all of which property shall, so far as permitted by law, be deemed to form a part and parcel of the real property and for the purpose of this Deed of Trust to be real estate and covered by this Deed of Trust;

(d)     All of Borrower's interest in all existing and future accounts, contract rights, general intangibles, files, books of account, agreements, permits, licenses and certificates necessary or desirable in connection with the acquisition, ownership, construction, leasing, operation or management of the Property, whether now existing or entered into or obtained after the date hereof, including the "Leases" and "Rents" (as hereinafter defined);

(e)     All leases and other agreements for use and occupancy of any part of the Property, now existing or hereafter entered into, including any and all extensions or modifications thereto (the "Leases"), and all of the rents, royalties, security deposits, income, receipts, revenues and other sums now due or which may hereafter become due to Borrower under any Lease or arising from the use and enjoyment of any part of the Property, and all rights and remedies which Borrower may have against any party under the Leases (the "Rents");

(f)     All the estate, interest, right, title or other claim or demand with respect to the proceeds of insurance and any and all awards made for the taking of any part of the Property by the power of eminent domain, or by any proceeding or purchase in lieu thereof; and

(g)     All of Borrower's interest in and to any deposits made with or other security given to utility companies by Borrower with respect to the Property.

TO HAVE AND TO HOLD the Property unto Trustee, for the benefit of Lender and its successors and assigns, forever.

Section 1.2     Grant of Security Interest.

(a)     With respect to any portion of the Property which constitutes personal property, fixtures or other property or interests governed by the Uniform Commercial Code of the State of Utah (the "UCC"), this Deed of Trust shall constitute a security agreement between Borrower, as the debtor, and Lender, as the secured party, and Borrower hereby GRANTS TO LENDER A SECURITY INTEREST in such portion of the Property.  Borrower agrees to execute and deliver to Lender all financing and continuation statements and other information which are from time to time required to establish and maintain the validity and priority of the security interests herein granted.  Upon the occurrence of an Event of Default, Lender shall have all of the rights and remedies of a secured party available under the UCC with respect to the property encumbered by the security interests; provided, however, Lender may, at its option, dispose of such property in accordance with Lender's rights and remedies under this Deed of Trust, in lieu of proceeding under the UCC.

(b)     This Deed of Trust shall also constitute a Financing Statement for purposes of the UCC and shall constitute a "fixture filing" under such statutes, and shall be filed in the real estate records of the County in which the Land is located. Borrower hereby authorizes Lender to file all Financing Statements evidencing the security interest granted to Lender in the Property in all appropriate filing

- 2 -

jurisdictions. For such purposes the name and address of the "Debtor" and the "Secured Party" are as set forth below:

| | |
|---|---|
| Debtor: | KJM Investments, LLC<br>35 West Center Street, #444<br>Midvale, Utah 84047<br>(Organization No. 9380764) |
| Secured Party: | Black Square Real Estate, Inc.<br>807 East South Temple, Suite 200<br>Salt Lake City, Utah 84102 |
| Address of Property: | 8061 South Allen Street<br>Midvale, Utah 84047 |

Section 1.3   Assignment of Leases and Rents.

(a)   Assignment. Borrower hereby absolutely and unconditionally assigns, sells, transfers and conveys to Trustee (for the benefit of Lender) and to Lender all of its right, title and interest in and to all Leases, whether now existing or hereafter entered into, and all of its right, title and interest in and to all Rents. This assignment is an absolute assignment and not an assignment for additional security only. So long as no Event of Default shall have occurred and be continuing, Borrower shall have a revocable license from Trustee and Lender to exercise all rights extended to the landlord under the Leases, including the right to receive and collect all Rents and to hold the Rents in trust for use in the payment and performance of the Secured Obligations (as defined in Section 1.4 hereof) and to otherwise use the same. The foregoing license is granted subject to the conditional limitation that no Event of Default shall have occurred and be continuing. Upon the occurrence and during the continuance of an Event of Default, whether or not legal proceedings have commenced, and without regard to waste, adequacy of security for the Secured Obligations or solvency of Borrower, the license herein granted shall automatically expire and terminate, without notice to Borrower by Trustee or Lender (any such notice being hereby expressly waived by Borrower to the extent permitted by applicable law).

(b)   Perfection Upon Recordation. Borrower acknowledges that Lender and Trustee have taken all actions necessary to obtain, and that upon recordation of this Deed of Trust, Lender and Trustee shall have, to the extent permitted under applicable law, a valid and fully perfected, present assignment of the Rents arising out of the Leases and all security for such Leases. Borrower acknowledges and agrees that, upon recordation of this Deed of Trust, Trustee's and Lender's interest in the Rents shall be deemed to be fully perfected, "choate" and enforced as to Borrower and to the extent permitted under applicable law, all third parties, including, without limitation, any subsequently appointed trustee in any case under Title 11 of the United States Code (the "Bankruptcy Code"), without the necessity of commencing a foreclosure action with respect to this Deed of Trust, making formal demand for the Rents, obtaining the appointment of a receiver or taking any other affirmative action.

(c)   Bankruptcy Provisions. Without limitation of the absolute nature of the assignment of the Rents hereunder, Borrower, Trustee and Lender agree that (a) this Deed of Trust shall constitute a "security agreement" for purposes of Section 552(b) of the Bankruptcy Code, (b) the security interest created by this Deed of Trust extends to property of Borrower acquired before the commencement of a case in bankruptcy and to all amounts paid as Rents and (c) such security interest shall extend to all Rents acquired by the estate after the commencement of any case in bankruptcy.

- 3 -

Section 1.4    Secured Obligations.

(a)    This Deed of Trust shall secure the following indebtedness and obligations, including all replacements, renewals, amendments, extensions, substitutions and modifications thereof:

(1)    Payment of all indebtedness and performance of all obligations and covenants of Borrower under or pursuant to (i) the Loan Agreement; (ii) the Note; (iii) this Deed of Trust; and (iv) all other Loan Documents (as defined in Section 1.4(c)); and

(2)    Payment of all future advances and all sums advanced by Lender to protect the Property or otherwise pursuant to the terms of the Loan Documents, with interest on all of the foregoing at the Default Rate from the date of Lender's advance to the date of Borrower's repayment of same.

(b)    The obligations secured by this Deed of Trust which are described in paragraph (a) above are herein collectively referred to as the "Secured Obligations."

(c)    This Deed of Trust, the Loan Agreement, the Note, and any other writing or instrument given to evidence or secure the payment or performance of any of the Secured Obligations (but not the Guaranty) are herein collectively referred to as the "Loan Documents." For the avoidance of doubt and notwithstanding anything to the contrary contained in this Deed of Trust or any other Loan Document, the Secured Obligations shall not include and this Deed of Trust shall not secure the obligations of Guarantor under the Guaranty.

## ARTICLE II
### Payments and Performance

Section 2.1    Payment of Secured Obligations. Borrower shall pay all sums it is obligated to pay under the Loan Documents without offset, counterclaim or defense, as and when the same shall become due. Borrower shall fully and faithfully observe and perform all of the obligations of Borrower to be observed and performed under the Loan Documents.

## ARTICLE III
### Remedies

Section 3.1    Remedies. Upon the occurrence of an Event of Default, Lender shall have the right to take any one or more of the following actions:

(a)    Declare all Secured Obligations to be due and payable, and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind except as otherwise provided herein;

(b)    Commence an action to foreclose this Deed of Trust in accordance with applicable law by judicial order or power of sale, or specifically enforce any of the covenants of this Deed of Trust;

(c)    Exercise any or all of the remedies available to Lender as a secured party under the UCC;

- 4 -

(d)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, and without regard to the adequacy of its security, enter upon and take possession of the Property or any part thereof and do any acts which it deems necessary or desirable to protect and preserve Lender's security; or

(e)     Without notice to Borrower or anyone claiming under Borrower, and without regard to the value of the Property, to obtain from any court having jurisdiction the appointment of a receiver or receivers of the Property, and Borrower hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all of the usual powers and duties of receivers in like or similar cases and all powers and duties of Lender in case of entry as provided in Section 3.5 hereof.

Section 3.2     Power of Sale. If Lender shall elect to foreclose this Deed of Trust, Lender may direct Trustee to sell the Property pursuant to the power of sale granted to Trustee hereunder at such time, place and in such manner as may be prescribed by applicable law, with all notices required by applicable law for such sale. Subject to applicable law, the proceeds of such sale shall be applied first, to the costs and expenses incurred by Trustee in conducting such sale; second, to the costs and expenses of Lender in enforcing its rights and remedies under the Loan Documents; third, to the payment of all Secured Obligations; and fourth, the remainder, if any, shall be paid to Borrower or the person lawfully entitled thereto. To the fullest extent permitted by applicable Law, Lender or the Trustee may obtain a deficiency judgment if the net proceeds of any sale of the Property under the power of sale granted herein are insufficient to pay in full all of the Secured Obligations.

Section 3.3     Remedies Not Exclusive; No Waiver. Except as may be prohibited by applicable law, every power or remedy given Lender by any of the Loan Documents, or to which Lender otherwise may be entitled, may be exercised without prejudice to any other power or remedy, concurrently, independently, in any order or any manner from time to time and as often as may be deemed expedient by Lender. No remedy or power is intended to be exclusive of any other remedy or power, and Lender may pursue inconsistent remedies. The acceptance by Lender of the payment or performance of any Secured Obligation after the same shall be due shall not constitute a waiver of Lender's right to the prompt payment or performance of same, or to declare a default as herein provided. The acceptance by Lender of any sum in an amount less than the sum then due shall not constitute a waiver of Borrower's obligation to pay the entire sum, and such failure shall continue to be a default by Borrower notwithstanding Lender's acceptance of such partial payment. Consent by Lender to any action or inaction of Borrower which is subject to consent or approval shall not be deemed a waiver of any other or future right of Lender to consent under this Deed of Trust. Nothing set forth in this Deed of Trust shall be construed to constitute Lender as a "mortgagee in possession" in the absence of its actual taking of possession of the Property pursuant to the powers granted herein.

Section 3.4     Waivers. To the extent permitted by law, Borrower hereby agrees that it shall not at any time insist upon, plead, claim or take any benefit or advantage, in any way whatsoever, whether now or in the future, and Borrower hereby irrevocably waives, all of the following, whether the same exists under federal or state law, or otherwise at law or in equity:

(a)     Any right of redemption of any of the Property after sale under this Deed of Trust;

(b)     All rights and claims it may have in or to any of the Property as a "homestead exemption," or similar exemptions;

- 5 -

(c)     Any stay, extension or moratorium law which may extend the period for enforcement of this Deed of Trust or any period of redemption;

(d)     Any and all right to require the marshaling of assets in connection with the exercise of any of Lender's remedies under this Deed of Trust, it being agreed that Lender shall have the right to determine, in its sole discretion, the order in which any of the Property shall be sold, or the order in which any Secured Obligations are satisfied from the proceeds of such sale;

(e)     Any law providing for the valuation or appraisal of all or any part of the Property prior to or after any sale or sales made pursuant to this Deed of Trust;

(f)     Personal service of process in any action or proceeding at any time commenced to enforce this Deed of Trust or any of the Loan Documents, Borrower hereby agreeing that such process shall be deemed properly and adequately served if sent to Borrower as provided in Section 5.2 hereof;

(g)     All notices not herein specifically required of Borrower's default under any of the Loan Documents, or of Lender's exercise, or election to exercise, any right, option or election under this Deed of Trust;

(h)     Any and all technical or procedural errors, defects and imperfections in any of the Loan Documents or any proceedings instituted by Lender under this Deed of Trust;

(i)     Any and all rights of set off that Borrower may have against Lender.

Section 3.5    Preservation of Security. Notwithstanding the provisions of this Article III, and in addition to any other rights or remedies of Lender under this Deed of Trust, should Borrower at any time fail to make any payment or perform any obligation under any Loan Document, which failure continues beyond any applicable cure period, Lender, in its sole discretion, without obligation to do so and without notice to or demand upon Borrower, and without releasing Borrower from any Secured Obligation or waiving any of Lender's rights under the Loan Documents, may cure such default of Borrower in such manner and to such extent as Lender may deem necessary to protect the security of this Deed of Trust. In connection therewith, without limiting its general powers, Lender shall have and is hereby given the right, but not the obligation:

(a)     To enter upon and take possession of the Property;

(b)     To direct Borrower to terminate any management agent and employ such management agent as Lender may reasonably determine;

(c)     To make additions, alterations, repairs and improvements to the Property which Lender may consider necessary or proper to keep the Property in good condition and repair;

(d)     To appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Lender;

(e)     To pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which, in the judgment of Lender, may affect the security of this Deed of Trust or be prior or superior hereto; and

- 6 -

      (f)     In exercising such powers, to pay necessary expenses, including employment of counsel or other necessary or desirable consultants.

All costs and expenses incurred by Lender in connection with the exercise of the foregoing rights, including costs of evidence of title, court costs, appraisals, surveys and reasonable attorneys' fees, shall be secured by this Deed of Trust, be reasonable in amount and be repayable by Borrower upon demand, with interest at the Default Rate.

## ARTICLE IV
### Environmental

Section 4.1    Indemnity. Borrower shall indemnify, defend and save and hold harmless Lender from and against any and all losses, liabilities, damages, costs and expenses (including costs of remediation or cleanup, loss of property value or defects in title to the Property, and the reasonable fees and disbursements of Lender's counsel) asserted against or suffered or incurred by Lender and in any way relating to or arising out of the generation, storage, manufacturing, refining, releasing, transportation, treatment, disposal or other presence of any Hazardous Substance on or about or removed from the Property, which indemnity shall survive: (i) the foreclosure of this Deed of Trust; (ii) any conveyance of the Property in lieu of such foreclosure; (iii) the payment and performance of the Secured Obligations, (iv) the release of the lien of this Deed of Trust; and (v) any other transfer of Borrower's title to or interest in the Property.

Section 4.2    Waiver of Lien. Lender may waive its lien against the Property or any portion thereof to the extent such Property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Borrower and all of Borrower's assets and property for the recovery of any deficiency. No such waiver shall be final or binding, on Lender unless and until a final money judgment is obtained against Borrower.

Section 4.3    Action for Environmental Claims. Lender may seek a judgment that Borrower has breached its covenants, representations and/or warranties with respect to the environmental matters contained in the Loan Documents (the "Environmental Provisions"), and may commence and maintain an action or actions in any court of competent jurisdiction for enforcement of the Environmental Provisions and/or recovery of any all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses (including without limitation court costs, consultants' fees and reasonable attorneys' fees, whether incurred in litigation or not and whether before or after judgment), incurred or advanced by Lender pursuant to the Environmental Provisions (collectively, the "Environmental Costs"). All Environmental Costs incurred by Lender shall bear interest at the Default Rate from and after the date such costs are incurred by Lender. All Environmental Costs together with interest thereon shall enjoy the same priority as the original principal amount of the Note. Borrower's obligations under this Section 4.3 shall survive foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Deed of Trust. The obligations of Borrower and rights of Lender under this Article IV are in addition to any obligations of Borrower and rights of Lender with respect to Hazardous Substances under any other Loan Document.

- 7 -

ARTICLE V

General Covenants

Section 5.1      Due on Sale.  If, without the Lender's prior written consent: (i) the Property or any part thereof or any interest in the Property or Borrower, including beneficial interests, is sold or conveyed; (ii) title to the Property or any interest therein is divested; (iii) the Property or any ownership interest in Borrower, including beneficial interests, is further encumbered or pledged (other than with respect to ownership interests, to the extent permitted by the Loan Agreement); or (iv) any lease of the Property or grant to any party of an option to lease or purchase the Property or any part thereof is entered into, Lender shall, at its sole discretion, be entitled to accelerate all sums due and payable under the Note and Loan Agreement to be immediately due and payable and exercise all remedies available to Lender under this Deed of Trust or any of the other Loan Documents.

Section 5.2      Notices.  All notices, demands, requests, and other communications desired or required to be given hereunder shall be in writing and shall be given in accordance with the terms of the Loan Agreement.

Section 5.3      Legal Existence.  If Borrower is a corporation, partnership, limited liability company or other entity, Borrower shall preserve and keep in full force and effect its legal existence and all franchises, rights and privileges under the laws of the state of its incorporation or formation and its standing and/or qualification to do business in the State of Utah.

Section 5.4      Liens.  Borrower shall not create, permit to accrue or suffer to exist upon any of the Property, any security interest, judgment lien, mechanic's or materialman's lien, or any other lien, encumbrance, charge, retention or reservation of title, pledge, hypothecation or assignment as security, and shall promptly pay, when the same shall become due, all claims and demands of contractors, subcontractors, mechanics, materialmen, laborers and others which claims, if unpaid, might result in or permit the creation of a lien upon the Property, and Borrower shall cause any such lien to be promptly paid and discharged, whether by payment, bonding or otherwise, within thirty (30) days after the filing of same.

Section 5.5      Successors.  The terms and provisions of this Deed of Trust shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

Section 5.6      Governing Law.  This Deed of Trust and the Loan Documents are being delivered, and are intended to be performed, in the State of New York and the laws of the State of New York and of the United States of America shall govern the rights and duties of the parties hereto and the validity, construction, enforcement and interpretation of this Deed of Trust and the other Loan Documents, provided, however, that with respect to the creation, perfection, priority and enforcement of the liens and security interests created by this Deed of Trust and the other Loan Documents, and the determination of deficiency judgments, the Laws of the State of Utah shall apply.  Any action for foreclosure of this Deed of Trust may be brought in the county where the Property is located, at Lender's option, and Borrower hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any such court and hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection that Borrower may now or hereafter have to the laying of venue in any such court and any claim that such court is an inconvenient forum.

- 8 -

Section 5.7    Release of Deed of Trust. Upon payment and performance in full of all of the Secured Obligations, Lender shall, upon demand of Borrower but in no event later than the time prescribed by applicable law, request Trustee to reconvey the Property, without warranty, to the persons then entitled thereto. Upon payment of its fees and any other sums owing to it under this Deed of Trust, Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any. The recitals in such conveyance of any matters or facts shall be conclusive of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

Section 5.8    Lender's Approval. Unless another standard is specified, in any instance under this Deed of Trust in which Lender's approval shall be required, such approval may be given or withheld by Lender in Lender's discretion. The granting of any approval by Lender shall not be deemed a waiver of such right of approval to any future matter, and all approvals by Lender must be in writing.

Section 5.9    Severability. If any term or provision of this Deed of Trust or the application thereof to any person or circumstance shall, to any extent, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or any other circumstance or situation with respect to this Deed of Trust, and each remaining term and provision of this Deed of Trust shall be valid and be enforced to the fullest extent by law.

## ARTICLE VI
### Trustee

Section 6.1    Responsibilities. Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be imposed upon Trustee. No provisions of this Deed of Trust shall require Trustee to expend or risk its own funds or incur any financial obligation. Trustee may consult with counsel of its own choosing, and action taken by Trustee on the advice of such counsel shall be conclusive proof that such actions are taken in good faith and in reliance thereon, and Trustee shall not be liable for any action taken in accordance with such advice or which is reasonably believed by Trustee to be within the rights and powers conferred upon it by this Deed of Trust.

Section 6.2    Successor Trustee. Subject to applicable law, Lender shall have the full power, at any time and from time to time, to appoint a successor or substitute trustee by instrument properly executed, acknowledged and filed for record in the county in which the Land is located. Such successor or substitute trustee shall thereupon have and possess all of the powers, authorities, duties and obligations vested in and upon the Trustee named herein.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE FOLLOWS]

- 9 -

IN WITNESS WHEREOF, Borrower has caused this Deed of Trust to be duly executed on the day and year set forth in the acknowledgment attached hereto and to be effective as of the date first set forth above.

KJM Investments, LLC
a Utah limited liability company

By: _____
Name: Kraig Munzert
Its: Manager

Signature Page – Deed of Trust

STATE OF UTAH                    )
COUNTY OF _Sa͟lt͟ L͟a͟k͟e͟_        )


On _F͟e͟l͟u͟y͟_ 5 , 20 1̲9̲, before me, _W͟i͟l͟l͟i͟a͟m͟ L͟ J͟o͟h͟n͟s͟o͟n͟_ , NOTARY
PUBLIC, personally appeared _K͟a͟r͟e͟n͟ A͟ M͟u͟r͟e͟t͟_ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Utah that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.


Signature: _____

Notary Public - State of Utah
**WILLIAM JOHNSON**
Commission #697739
My Commission Expires
December 14, 2021
(Seal)

EXHIBIT A

Legal Description

LOT 24, BECKSTEAD SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE AND OF RECORD IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.

Assessor's Parcel Number of ▇▇▇▇▇▇▇▇▇▇▇

Exhibit "C"

Pay to the Order of

*DB RR LLC*

Without Recourse

Black Square Real Estate, Inc.

**SECURED PROMISSORY NOTE**

Paul F. Basmajian

$179,000.00

January 31, 2018

FOR VALUE RECEIVED, the undersigned, KJM Investments, LLC, a Utah limited liability company ("Borrower"), promises to pay to the order of Black Square Real Estate, Inc., a Delaware corporation ("Lender"), whose address is 807 East South Temple, Suite 200, Salt Lake City, Utah 84102, the sum of **ONE HUNDRED SEVENTY NINE THOUSAND AND 00/100 DOLLARS** ($179,000.00) in lawful and legal tender of the United States of America, together with interest thereon as specified below.

1.      Loan Agreement. This Promissory Note (this "Note") is executed and delivered pursuant to the terms of that certain Loan Agreement of even date herewith entered into between Borrower and Lender (the "Loan Agreement"). All capitalized terms used herein without definition shall have the meanings given to such terms in the Loan Agreement.

2.      Interest. Interest (including Default Interest) shall accrue on the principal balance of this Note as specified in the Loan Agreement and shall be subject to any limitations of interest specified in Section 8.4 of the Loan Agreement.

3.      Payment. Principal and interest under this Note shall be due and payable as specified in the Loan Agreement. The entire principal balance of this Note shall be due and payable in full on the Maturity Date. Payments under this Note shall not be reduced, discharged or released because or by reason of any existing or future offset, claim, deduction or defense of Borrower, or any other party, against Lender.

4.      Late Charges. The failure to make any payment under this Note when due shall be subject to a late charge as specified in the Loan Agreement.

5.      Prepayment. Borrower shall have the right to prepay this Note only as specified in the Loan Agreement.

6.      Default. Upon the occurrence of an Event of Default, Lender shall have the remedies specified in the Loan Agreement and in the Deed of Trust, including without limitation the right to declare the entire Loan to be immediately due and payable without presentment, demand, protest, notice of protest or dishonor, notice of intent to accelerate the maturity thereof, notice of acceleration of the maturity thereof, or any other notice of default of any kind, all of which are hereby expressly waived by Borrower.

7.      Attorneys' Fees. In the event of a default under this Note, Borrower shall pay the reasonable attorneys' fees and expenses and other costs incurred by Lender as specified in the Loan Agreement.

8.      Amendments and Waivers. No amendment or waiver of any provision of this Note shall be effective unless in writing and signed by the Lender.

9.      Security. This Note is secured by, among other instruments, that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture Filing of even date herewith (the "Deed of Trust") made by Borrower for the benefit of Lender encumbering certain property owned by Borrower located in the City of Midvale, County of Salt Lake, State of Utah, as more particularly described in the Deed of Trust (the "Property"); and (ii) that certain Guaranty of even date herewith (the "Guaranty") made by Mary Anne Munzert, an individual ("Guarantor") in favor of Lender.

10.    Use of Proceeds. Borrower shall use the proceeds of the Loan solely for the purpose of acquiring the Property for investment purposes, and Borrower warrants and represents to Lender that all Loan proceeds shall be solely used to acquire the Property for investment purposes and that no Loan proceeds shall be used for consumer, family or household purposes. Borrower further warrants and represents to Lender that it shall at no time during the term of the Loan inhabit the Property.

11.    Due on Sale. The Deed of Trust contains (and this Note hereby incorporates) the following provision:

> Due on Sale. If, without the Lender's prior written consent: (i) the Property or any part thereof or any interest in the Property or Borrower, including beneficial interests, is sold or conveyed; (ii) title to the Property or any interest therein is divested; (iii) the Property or any ownership interest in Borrower, including beneficial interests, is further encumbered or pledged (other than with respect to ownership interests, to the extent permitted by the Loan Agreement); or (iv) any lease of the Property or grant to any party of an option to lease or purchase the Property or any part thereof is entered into, Lender shall, at its sole discretion, be entitled to accelerate all sums due and payable under the Note and Loan Agreement to be immediately due and payable and exercise all remedies available to Lender under this Deed of Trust or any of the other Loan Documents.

12.    Successors and Assigns. This Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, without Lender's prior consent, assign or transfer its obligations under this Note. Nothing in this Note shall limit Lender's (including its successors and assigns) right to sell or transfer the Loan or any interest in the Loan one or more times without notice to Borrower.

13.    Time of Essence. It is agreed that time is of the essence with respect to Borrower's obligations under this Note.

14.    Construction. This Note is being delivered, and is intended to be performed, in the State of New York and the laws of the State of New York of the United States of America shall govern the rights and duties of the parties hereto and the validity, construction, enforcement and interpretation of this Note and the other Loan Documents, provided, however, that with respect to the creation, perfection, priority and enforcement of the liens and security interests created by the Deed of Trust and the other Loan Documents, and the determination of deficiency judgments, the Laws of the State where the Property is located shall apply.

15.    Entire Agreement. This Note and the other Loan Documents embody the entire agreement and understanding between Lender and Borrower and supersede all prior agreements and understandings between such parties relating to the subject matter hereof and thereof. Accordingly, the Loan Documents may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

16.    Invalid Provisions. If any provision of this Note is held to be illegal, invalid or unenforceable, such provision shall be fully severable; this Note shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part thereof; the remaining provisions thereof shall remain in full effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance therefrom; and in lieu of such illegal, invalid or unenforceable provision there shall be

added automatically as a part of this Note a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible to be legal, valid and enforceable.

[*Remainder of Page Left Intentionally Blank*]

**IN WITNESS WHEREOF**, the undersigned has executed this Note on the date first written above.

**BORROWER:**

KJM Investments, LLC
a Utah limited liability company

By: _____
Name: Kraig Munzert
Its: Manager

[Signature Page to Secured Promissory Note]

Exhibit "D"

**LOAN AGREEMENT**

dated as of January 31, 2018

by and between

**Black Square Real Estate, Inc.,**
as Lender,

and

**KJM Investments, LLC,**
as Borrower

## TABLE OF CONTENTS

Page

**ARTICLE 1 DEFINITIONS; PRINCIPLES OF CONSTRUCTION** ...........................1
1.1      Definitions............................................................................................ 1
1.2      Principles of Construction.................................................................... 2
1.3      Other Terms ......................................................................................... 3

**ARTICLE 2 LOAN TERMS AND ADVANCES**...........................................................3
2.1      The Loan ............................................................................................. 3
2.2      Maturity Date...................................................................................... 3
2.3      Payments, Prepayments. ..................................................................... 4
2.4      Advance .............................................................................................. 5
2.5      Origination Fee ................................................................................... 6

**ARTICLE 3 REPRESENTATIONS AND WARRANTIES**...........................................6
3.1      Organization and Power...................................................................... 6
3.2      Validity of Loan Documents............................................................... 6
3.3      Litigation............................................................................................. 7
3.4      Bankruptcy .......................................................................................... 7
3.5      Agreements ......................................................................................... 7
3.6      Compliance ......................................................................................... 7
3.7      Financial Information.......................................................................... 7
3.8      Condemnation ..................................................................................... 8
3.9      Federal Reserve Regulation ............................................................... 8
3.10     Utilities and Public Access ................................................................. 8
3.11     Separate Lots....................................................................................... 8
3.12     Assessments ........................................................................................ 8
3.13     Insurance ............................................................................................. 8
3.14     Licenses............................................................................................... 8
3.15     Flood Zone .......................................................................................... 9
3.16     Physical Condition ............................................................................. 9
3.17     Ownership; Leases.............................................................................. 9
3.18     No Prior Work..................................................................................... 9
3.19     Tax Matters ......................................................................................... 9
3.20     Illegal Activity .................................................................................... 9
3.21     No Change in Facts or Circumstances; Disclosure............................ 9
3.22     Investment Company Act ................................................................. 10
3.23     Business Purposes............................................................................ 10
3.24     Survival of Representations and Warranties..................................... 10

**ARTICLE 4 COVENANTS** .................................................................................................10
4.1      No Encumbrances.............................................................................. 10
4.2      No Transfers...................................................................................... 10
4.3      Title to Property ................................................................................ 11

| 4.4 | Existence, Compliance with Law | 11 |
|-----|----|----|
| 4.5 | Taxes | 11 |
| 4.6 | Access to Property | 11 |
| 4.7 | Planned Improvements; Alterations | 11 |
| 4.8 | Notice of Certain Events | 11 |
| 4.9 | Accuracy of Representations and Warranties | 11 |
| 4.10 | No Occupany | 11 |
| 4.11 | Costs and Expenses | 12 |
| 4.12 | Further Assurances | 12 |
| 4.13 | Indemnification | 12 |
| 4.14 | Insurance | 13 |
| 4.15 | Estoppel Statement | 15 |
| 4.16 | No Debt | 15 |
| 4.17 | Environmental Matters | 15 |

**ARTICLE 5 EVENTS OF DEFAULT** .................................................. **16**

| 5.1 | Payments | 16 |
|-----|----|----|
| 5.2 | Sale, Encumbrance | 16 |
| 5.3 | Covenants | 16 |
| 5.4 | Representations and Warranties | 16 |
| 5.5 | Involuntary Bankruptcy or Other Proceeding | 17 |
| 5.6 | Voluntary Bankruptcy | 17 |
| 5.7 | Other Obligations | 17 |

**ARTICLE 6 REMEDIES** .................................................. **17**

| 6.1 | Remedies - Insolvency Events | 17 |
|-----|----|----|
| 6.2 | Remedies - Other Events | 17 |
| 6.3 | Lender's Right to Perform the Obligations | 18 |
| 6.4 | Reimbursement of Expenses | 18 |
| 6.5 | Inspections | 18 |

**ARTICLE 7 CONDEMNATION/CASUALTY** .................................................. **18**

| 7.1 | Casualty | 18 |
|-----|----|----|
| 7.2 | Condemnation | 19 |
| 7.3 | Restoration | 19 |

**ARTICLE 8 MISCELLANEOUS** .................................................. **22**

| 8.1 | Notices | 22 |
|-----|----|----|
| 8.2 | Appointment of Agent | 23 |
| 8.3 | Amendments and Waivers | 23 |
| 8.4 | Limitation on Interest | 23 |
| 8.5 | Invalid Provisions | 24 |
| 8.6 | Lender Not in Control; No Partnership | 24 |
| 8.7 | Time of the Essence | 24 |
| 8.8 | Successors and Assigns | 24 |
| 8.9 | Waivers | 24 |

iii

| 8.10 | Cumulative Rights | 25 |
| 8.11 | Titles of Articles, Sections and Subsections | 25 |
| 8.12 | Forum | 25 |
| 8.13 | Survival | 25 |
| 8.14 | Waiver of Jury Trial | 25 |
| 8.15 | Governing Law | 25 |
| 8.16 | Entire Agreement | 26 |
| 8.17 | Use of Name | 26 |
| 8.18 | Counterparts | 26 |

**SCHEDULES**

2.3(f). Servicer Instructions

3.1. Borrower's Ownership Structure

**EXHIBITS**

A. Planned Improvements

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "Agreement") is entered into as of January 31, 2018 (the "Closing Date") between (i) Black Square Real Estate, Inc., a Delaware corporation having an address at 807 East South Temple, Suite 200, Salt Lake City, Utah ("Lender"), and (ii) KJM Investments, LLC, a Utah limited liability company, having its principal place of business at 35 West Center Street, #444, Midvale, Utah ("Borrower").

### RECITALS

A.  Subject to the terms and conditions set forth herein, Lender has agreed to make a loan to Borrower in the maximum principal amount of up to One Hundred Seventy Nine Thousand and 00/100 Dollars ($179,000.00) (the "Note Amount") or so much thereof as may be advanced hereunder (the "Loan"). Concurrently with this Agreement, Borrower is executing a Promissory Note in the Note Amount, payable to the order of Lender (the "Note"). As more particularly described in Section 2.4 below, the Advance under the Note shall be in the amount of One Hundred Seventy Nine Thousand and 00/100 Dollars ($179,000.00).

B.  Borrower owns or is simultaneously herewith acquiring certain real property known by the street address of 8061 South Allen Street, Midvale, Utah (the "Property"), which is described on Exhibit A of that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture Filing dated as of the date hereof (the "Security Instrument").

C.  Concurrently with this Agreement, Mary Anne Munzert, an individual ("Guarantor") is executing and delivering a Guaranty for the benefit of Lender (the "Guaranty").

D.  This Agreement, and all other documents evidencing and/or securing the Loan, including the Note, the Security Instrument, and the Guaranty, are hereinafter collectively referred to as the "Loan Documents".

**NOW, THEREFORE,** in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Lender and Borrower hereby agree as follows:

### ARTICLE 1
### DEFINITIONS; PRINCIPLES OF CONSTRUCTION

1.1     Definitions.  Capitalized terms not otherwise defined in the body of this Agreement shall have the meanings set forth below.

"Appraisal" means an appraisal, interior broker's price opinion or other determination of value of the Property given by an appraisal firm, licensed real estate agent or broker retained by Lender, which Appraisal is subject to Lender's approval.

"Appraised Value" means the value set forth in the Appraisal approved by Lender.

"Business Day" shall mean any day other than a Saturday, Sunday or any other day on which national banks in New York, New York are not open for business.

"Debt" means the outstanding principal amount set forth in, and evidenced by, this Agreement and the Note together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan under the Note, this Agreement, the Security Instrument or any other Loan Document.

"Default" means an event that, in and of itself or, with notice, lapse of time or both, could constitute an Event of Default.

"Default Rate" means a rate per annum equal to the lesser of (a) six percent (6%) above the Interest Rate and (b) the maximum non-usurious rate, if any, that may be charged or received.

"Governmental Authority" means any (a) federal, state, municipal, foreign or other governmental entity, board, bureau, agency or instrumentality, (b) administrative or regulatory authority (including any central bank or similar authority) or (c) court or judicial authority.

"Inspection Agent" means any party retained by Lender for the purpose of reviewing the renovation and repair work completed at the Property.

"Interest Rate" means ten percent (10%) per annum.

"Law" means any laws (including the common law), ordinances, constitutions, regulations, decrees, directives, statutes, treaties, rules, codes, licenses, requirements, orders or injunctions, including those related to the environment, adopted, enacted, implemented, promulgated, issued or entered by or under the authority of any Governmental Authority, each as amended or modified, and as in effect from time to time.

"Planned Improvements" means the repair, renovation work and improvements to the Property described on Exhibit A hereto.

"Projected Value" means the projected value of the Property based upon completion of all Planned Improvements as underwritten by Lender.

"Servicer" means the Lender's designated servicer or other firm that Lender may approve from time to time. The initial Servicer selected by Lender is Statebridge Company LLC.

2

1.2    Principles of Construction.

(a)    Words used in this Agreement and the other Loan Documents in the singular, where the context so permits, shall be deemed to include the plural and *vice versa.* The definitions of words in the singular in this Agreement and the other Loan Documents shall apply to such words when used in the plural where the context so permits and *vice versa.*

(b)    The words "hereof," "hereunder" and similar terms when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and article, section, subsection, schedule and exhibit references herein are references to articles, sections, subsections, schedules and exhibits to this Agreement unless otherwise specified.

(c)    When used in this Agreement and the other Loan Documents, the phrase "including" shall mean "including, but not limited to," the phrase "satisfactory to Lender" and words to that effect, shall mean "in form and substance satisfactory to Lender in all respects," the phrase "with Lender's consent" or "with Lender's approval" or words to that effect, shall mean such consent or approval at Lender's discretion, and the phrase "acceptable to Lender" shall mean "acceptable to Lender at Lender's sole discretion." Without limitation, unless the Loan Document expressly states another standard, Lender may make all decisions, including approvals, consents, determinations and waivers, in its sole and absolute discretion.

(d)    Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof.

1.3    Other Terms. All accounting terms not specifically defined herein shall be construed in accordance with generally accepted accounting principles. The terms "including" or "includes" mean "including without limitation" or "includes without limitation," as applicable. Reference to any person include that person's successors and, to the extent permitted by this agreement, assigns and references to a person in a particular capacity excludes such person in any other capacity or individually.

## ARTICLE 2
## LOAN TERMS AND ADVANCES

2.1    The Loan. Lender agrees to make the Loan to Borrower subject to the terms and conditions of this Agreement.

2.2    Maturity Date. The Maturity Date shall mean (a) February 1, 2019 (the "Original Maturity Date"), (b) the Extended Maturity Date, if Lender consents to the extension(s) set forth below, or (c) such earlier date on which all principal and interest under the Note (or this Agreement) is due and payable as therein or herein provided by declaration of acceleration, or otherwise. Borrower may request that Lender extend the term of the Loan to the date occurring six (6) months after the Original Maturity Date

3

(such extended date being the "Extended Maturity Date"). If Borrower desires to extend the term of the Loan, Borrower shall deliver to Lender a request therefor no later than sixty (60) days prior to the then applicable Maturity Date. Lender shall have the sole option as to whether to extend the term. If Lender agrees to an extension, the Maturity Date shall be extended only upon satisfaction of the following terms and conditions:

(a)      no Default or Event of Default shall have occurred and be continuing at any time from the date the applicable extension is requested through and including the date on which the applicable extension commences;

(b)      in connection with each extension, Borrower shall have delivered to Lender together with its notice pursuant to this Section 2.2 and as of the commencement of the applicable extension, an Officer's Certificate in form reasonably acceptable to Lender certifying that each of the representations and warranties of Borrower contained in the Loan Documents is true, complete and correct as of the date of such Officer's Certificate; and

(c)      in connection with an extension, Borrower shall pay to Lender, by wire transfer of immediately available funds, an extension fee equal to one and twenty-five one-hundreths of a percent (1.25%) multiplied by the outstanding principal balance of the Loan.

All references in this Agreement and in the other Loan Documents to the Maturity Date shall mean the applicable Extended Maturity Date in the event the applicable extension is effectuated, or such earlier date upon declaration of acceleration by Lender, prepayment by Borrower, or otherwise.

2.3     Payments, Prepayments.

(a)      Installment Payments. Borrower shall pay all accrued interest on this Loan monthly (each an "Interest Only Payment"), with the first payment due on March 1, 2018 and continuing on the first day of each month thereafter through February 1, 2019. If not sooner paid, by declaration of acceleration or otherwise, the entire unpaid principal balance of the Loan and all interest thereon shall be paid on the Maturity Date.

(b)      Prepayments. The Loan may be prepaid in full, but not in part, at any time upon not less than fifteen (15) days prior notice to Lender.

(c)      Interest Calculation. Interest on the unpaid principal balance of the Loan will accrue at the Interest Rate from the date of advance until final payment thereof. Interest on the outstanding principal balance of the Loan shall be calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) a daily rate equal to the Interest Rate divided by three hundred sixty (360) by (c) the outstanding principal balance of the Loan.

(d)      Payments after Default. Upon the occurrence and during the continuance of an Event of Default, interest on the outstanding principal balance of the Loan and, to the extent permitted by applicable Law, overdue interest and other amounts

4

due in respect of the Loan, shall accrue at the Default Rate, calculated from the date of the underlying Default without regard to any grace or cure periods contained herein, and shall be payable immediately on demand from Lender. Interest at the Default Rate shall be computed from the occurrence of the Default until the actual receipt and collection of the Loan (or that portion thereof that is then due). To the extent permitted by applicable Law, interest at the Default Rate shall be added to the Loan, shall itself accrue interest at the same rate as the Loan, and shall be secured by the Security Instrument. This paragraph shall not be construed as an agreement or privilege to extend the date of the payment of the Loan, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default and Lender retains its rights under the Note to accelerate and to continue to demand payment of the Debt upon the happening of any Event of Default.

(e)     Late Fee. If any monthly payment is not received by the fifth day of the month when such payment is due, Lender may assess a late charge equal to 5.00% of the amount of the payment to defray the expenses incident to such delay. Payment of the late charge shall be a condition to curing any Event of Default. This provision for a late charge is not permission to make a late payment. If Lender has not received full payment of all amounts due under the Loan Documents by the Maturity Date, the 5.00% fee described herein will not be assessed on the principal sum then due, although all Lender's remedies under the Loan Documents for an Event of Default will apply (including collection of interest at the Default Rate).

(f)     Application of Payments. Except when there exists a Default or Event of Default or as provided in Article 7 with respect to Insurance and Condemnation Proceeds and Net Deficiency Proceeds, all payments received by Lender under the Loan Documents shall be applied: first, to any fees and expenses due to Lender under the Loan Documents; second, to any interest at the Default Rate; third, to accrued and unpaid interest; and fourth, to the principal sum due under the Loan. During the existence of a Default or Event of Default, Lender may apply all payments, including any Insurance and Condemnation Proceeds and Net Proceeds Deficiency, in such order and manner as Lender determines. All payments hereunder shall be paid in U.S. dollars in immediately available funds (1) by wire transfer or electronic funds transfer via an automated clearing house to Servicer, or (2) by such other means and/or to such other place or person as Lender designates from time to time. Until further notice payments shall be made to Servicer in accordance with the instructions set forth in Schedule 2.3(f).

2.4     Advance. On the Closing Date, Lender shall make an advance to Borrower in the amount of $179,000.00 (the "Advance"). The Advance shall be subject to the following conditions, in addition to such other conditions as Lender may require:

(a)     Lender shall have received a loan policy of title insurance on such form as Lender requires in the Note Amount insuring that the lien of the Security Instrument is a valid first priority lien on the Property, subject only to the lien of current real property taxes and assessments not yet due and payable and such non-monetary encumbrances as are acceptable to Lender and including such endorsements as Lender may require (the "Title Policy").

5

(b)     Borrower shall have executed and delivered the Note and the
Security Instrument, and the Security Instrument shall have been recorded in the local land
records, at the expense of Borrower.

(c)     Lender shall have received an Appraisal satisfactory to Lender
setting forth both the as-is Appraised Value and the Projected Value.

(d)     Borrower shall have caused Guarantor to execute and deliver to
Lender the Guaranty.

2.5     Origination Fee. In consideration of Lender making the Loan hereunder to
Borrower, Borrower shall pay a fee in the amount of Three Thousand Five Hundred
Eighty and No/100 Dollars ($3,580.00) (the "Origination Fee") to Lender, which shall be
deducted from the gross proceeds of the Loan distributed on the Closing Date. Borrower
shall pay to Lender an underwriting fee in the amount of Seven Hundred Fifty and
No/100 Dollars ($750.00). Other than the Origination Fee and the underwriting fee,
Borrower has not paid any fees or similar compensation to or at the direction of Lender or
any of its agents in connection with the Loan, it being understood that such fees and
compensation shall not be deemed to include third party diligence and closing costs such
as appraisal fees and title insurance costs.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Lender that:

3.1     Organization and Power. Borrower is a limited liability company duly
organized and validly existing and in good standing in the State of Utah, with requisite
power and authority to own the Property and to transact the businesses in which it is now
engaged. Borrower is duly qualified to do business and is in good standing in each
jurisdiction where it is required to be so qualified in connection with the Property, its
businesses and operations. Borrower's principal place of business as of the date hereof is
the address set forth in the introductory paragraph of this Agreement. Borrower is
organized under the laws of the State of Utah and its organizational identification number
is 9380764. The Borrower's ownership structure is set forth on Schedule 3.1 hereto.

3.2     Validity of Loan Documents. The execution, delivery and performance by
each of Borrower and Guarantor of the Loan Documents to which they are parties: (i) are
duly authorized and do not require the consent or approval of any other party or
governmental authority which has not been obtained; and (ii) will not violate any Law or
result in the imposition of any lien, charge or encumbrance upon all or any portion of the
Property, except for any liens in favor of Lender as contemplated by the Loan
Documents. The Loan Documents to which they are parties constitute the legal, valid
and binding obligations of Borrower and Guarantor, as applicable, enforceable in
accordance with their respective terms. The Loan Documents are not subject to any right
of rescission, set-off, counterclaim or defense by Borrower or Guarantor, including the

6

defense of usury, and neither Borrower nor Guarantor has asserted any right of rescission, set-off, counterclaim or defense with respect thereto.

3.3     Litigation. There is no litigation, administrative proceeding, investigation or other legal action (including any proceeding under any state or federal bankruptcy or insolvency Law) pending or, to the knowledge of Borrower or Guarantor, threatened, against Borrower, Guarantor or the Property.

3.4     Bankruptcy. Neither Borrower nor Guarantor is the subject of any petition under state or federal bankruptcy or insolvency Laws or for the liquidation of all or a major portion of its assets or property, and neither Borrower nor Guarantor has knowledge of any person contemplating the filing of any such petition against it. No petition under the bankruptcy code or similar state bankruptcy or insolvency Law has been filed against Borrower or any Guarantor in the last two (2) years, and neither Borrower nor Guarantor in the last two (2) years has ever made an assignment for the benefit of creditors or taken advantage of any insolvency act for the benefit of debtors. Neither Borrower nor Guarantor is contemplating either the filing of a petition by it under the bankruptcy code or similar state bankruptcy or insolvency Law or the liquidation of all or a major portion of Borrower's or Guarantor's assets or property, and neither Borrower nor Guarantor has knowledge of any person contemplating the filing of any such petition against it.

3.5     Agreements. Neither Borrower nor Guarantor is a party to any agreement or instrument or subject to any restriction which would materially and adversely affect Borrower, Guarantor or the Property, or Borrower's or Guarantor's business, properties or assets, operations or condition, financial or otherwise. Neither Borrower nor Guarantor is in default in any material respect in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any material agreement or instrument to which it is a party or by which Borrower, Guarantor or the Property is bound.

3.6     Compliance. The Property and the use thereof complies in all respects with all applicable Laws and, when the Planned Improvements are constructed, will continue to comply. The Property is currently zoned to be used as a one-to-four family residence. No legal proceedings are pending or, to the knowledge of Borrower and Guarantor, threatened with respect to the zoning of the Property. Neither the zoning nor any other right to construct, use or operate the Property is in any way legally dependent upon any property other than the Property. Neither Borrower nor Guarantor is in default or violation of any order, writ, injunction, decree or demand of any Governmental Authority.

3.7     Financial Information. All financial data that has been delivered to Lender in respect of Borrower and Guarantor (i) is true, complete and correct in all material respects, (ii) accurately represents in all material respects the financial condition of Borrower and Guarantor, as applicable, as of the date of such reports, and (iii) has been prepared in accordance with generally accepted accounting principles throughout the periods covered, except as disclosed therein. Since the date of such financial statements,

7

there has been no materially adverse change in the financial condition, operations or business of Borrower or Guarantor, as applicable.

3.8   Condemnation. No Condemnation or other similar proceeding has been commenced or, to the best of Borrower's and Guarantor's knowledge, is threatened or contemplated with respect to all or any portion of the Property or for the relocation of roadways providing access to the Property.

3.9   Federal Reserve Regulation. No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose which would be inconsistent with such Regulation U or any other Regulations of such Board of Governors, or for any purposes prohibited by applicable Law or by the terms and conditions of this Agreement or the other Loan Documents.

3.10   Utilities and Public Access. The Property has rights of access to public ways and is served by public water, sewer, sanitary sewer and storm drain facilities adequate to service the Property for its intended use. All public utilities necessary or convenient to the use and enjoyment of the Property are located either in the public right-of-way abutting the Property (which are connected so as to serve the Property without passing over other property) or in recorded easements serving the Property and such easements are set forth in and insured by the Title Insurance Policy.

3.11   Separate Lots. The Property is comprised of a separate tax lot and does not constitute a portion of any other tax lot.

3.12   Assessments. There are no pending or proposed special or other assessments for public improvements or otherwise affecting the Property, nor are there any contemplated improvements to the Property that may result in such special or other assessments.

3.13   Insurance. Borrower has obtained and has delivered to Lender certified copies of all insurance policies reflecting the insurance coverages, amounts and other requirements set forth in this Agreement. No person, including Borrower and Guarantor, has done, by act or omission, anything which would impair in any material respect the coverage of any such policy.

3.14   Licenses. All Licenses have been obtained and are in full force and effect and are not subject to revocation, suspension or forfeiture, provided the Licenses required for the Planned Improvements shall be obtained prior to the commencement of such Improvements; provided, that, to the extent any License is not required at such time in order to complete the Planned Improvements as scheduled and in accordance with good construction practices and Laws, same shall be obtained at such times as necessary to ensure such completion. Borrower shall keep and maintain all Licenses necessary for the operation of the Property.

3.15   Flood Zone. None of the improvements on the Property are located in an area as identified by the Federal Emergency Management Agency as an area having

8

special flood hazards or, if so located, the flood insurance required pursuant to
Section 4.14 is in full force and effect.

3.16    Physical Condition. Upon completion of the Planned Improvements, the
Property will be in good condition, order and repair in all material respects; there will not
exist any structural or other material defects or damage in or to the Property, whether
latent or otherwise. The Property is, and upon completion of the Planned Improvements
will be, free from damage covered by fire or other casualty. All liquid and solid waste
disposal, septic and sewer systems located on the Property will be in a good and safe
condition and repair and in compliance with all applicable Laws.

3.17    Ownership; Leases. Borrower is the sole owner of the Property. The
Property is not subject to any Leases. Other than Borrower, no person has any
possessory interest in the Property or right to occupy the same. The Property is not
occupied and neither Borrower nor Guarantor has any intent to occupy the Property, or to
permit any other person to occupy the Property during the term of the Loan.

3.18    No Prior Work. No renovation or other work has been performed with
respect to the Property by or on behalf of Borrower prior to Borrower taking sole fee
ownership thereof.

3.19    Tax Matters. All transfer taxes, deed stamps, intangible taxes or other
amounts in the nature of transfer taxes required to be paid by any person under applicable
Law in connection with the transfer of the Property to Borrower have been paid. All
mortgage, mortgage recording, stamp, intangible or other similar tax required to be paid
by any person under applicable Law in connection with the execution, delivery,
recordation, filing, registration, perfection or enforcement of any of the Loan Documents
have been paid. Each of Borrower and Guarantor has filed all federal, state, county,
municipal, and city income and other tax returns required to have been filed by it and has
paid all taxes and related liabilities which have become due pursuant to such returns or
pursuant to any assessments received by it. Neither Borrower nor Guarantor knows of
any basis for any additional assessment in respect of any such taxes and related liabilities
for prior years. No tax audit is pending or, to Borrower's and Guarantor's knowledge,
threatened against Borrower or Guarantor.

3.20    Illegal Activity. No portion of the Property has been or will be purchased
with proceeds of any illegal activity and to Borrower's and Guarantor's knowledge, there
are no illegal activities or activities relating to any controlled substances at the Property.

3.21    No Change in Facts or Circumstances; Disclosure. Neither Borrower nor
Guarantor has failed to disclose any fact that could cause any information described in
any representation or warranty made herein to be misleading or adversely affect the value
of the Property or the completion of the Planned Improvements. No statement of fact
made by or on behalf of Borrower or Guarantor in this Agreement or in any of the other
Loan Documents contains any untrue statement of a material fact or omits to state any
material fact necessary to make statements contained herein or therein not misleading.
There is no fact presently known to Borrower or Guarantor which has not been disclosed

9

to Lender which adversely affects, nor as far as Borrower and Guarantor can foresee, might adversely affect, the business, operations or condition (financial or otherwise) of Borrower, Guarantor or the Property.

3.22   Investment Company Act. Neither Borrower nor Guarantor is (a) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; (b) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended; or (c) subject to any other Law which purports to restrict or regulate its ability to borrow money.

3.23   Business Purposes. The Loan is solely for the business purpose of Borrower, and is not for personal, family, household, or agricultural purposes. The Loan originated under the Loan Documents is not a consumer loan, and Borrower and Guarantor understand, acknowledge and agree that the Real Estate Settlement Procedures Act and its implementing Regulation, Regulation X, and the Truth in Lending Act and its implementing Regulation, Regulation Z, do not apply to the Loan. Without limitation, during the term of the Loan the Property shall not be used or occupied for residential purposes. Borrower shall not reside in the Property at any time during the term of the Loan.

3.24   Survival of Representations and Warranties. Borrower and Guarantor agree that all of the representations and warranties of Borrower and Guarantor, set forth in Article 3 and elsewhere in this Agreement and in the other Loan Documents shall survive indefinitely. All representations, warranties, covenants and agreements made in this Agreement or in the other Loan Documents by Borrower or Guarantor shall be deemed to have been relied upon by Lender notwithstanding any investigation heretofore or hereafter made by Lender or on its behalf.

## ARTICLE 4
## COVENANTS

Borrower covenants and agrees with Lender as follows:

4.1   No Encumbrances. Borrower shall not create, incur, assume, grant or permit to exist any lien or other encumbrance on all or any portion of the Property, other than the liens in favor of Lender contemplated by this Agreement or other Loan Documents and the lien of real estate taxes not yet due and payable. Borrower may request Lender's consent to place a subordinate lien to secure Subordinated Debt, which consent may be withheld in Lender's discretion.

4.2   No Transfers. Neither Borrower nor Guarantor shall directly or indirectly sell or transfer all or any portion of the Property or any of its right, title and interest therein, including any direct or indirect beneficial interest.

10

4.3     Title to Property.  Borrower shall warrant and defend the title to the
Property and every part thereof and the validity and priority of the liens created by the
Security Instrument against the claims of all persons whatsoever.

4.4     Existence, Compliance with Law.  Borrower shall do or cause to be done
all things necessary to preserve, renew and keep in full force and effect all Licenses and
comply with all Laws applicable to it, the Property and the completion of the Planned
Improvements. Borrower shall not engage in any dissolution, liquidation or
consolidation or merger with or into any other business entity, modify, amend, waive or
terminate its organizational documents or its qualification and good standing in any
jurisdiction. Borrower shall not change its name, identity (including its trade name or
names), or principal place of business, without, in each case, first giving Lender thirty
(30) days prior notice. Borrower shall not change its corporate, partnership or other
structure, or the place of its organization, without, in each case, the consent of Lender.

4.5     Taxes.  Borrower shall pay all taxes now or hereafter levied or assessed or
imposed against the Property or any part thereof as the same become due and payable.
Borrower shall furnish to Lender receipts, or other evidence for the payment of the taxes
prior to the date the same shall become delinquent.

4.6     Access to Property.  Borrower shall permit Lender and its agents,
representatives and employees to inspect the Property at any time and from time to time.

4.7     Planned Improvements; Alterations.

(a)     Borrower shall promptly following the date hereof commence the
Planned Improvements. Once commenced Borrower shall diligently pursue and complete
the Planned Improvements in a good and workmanlike manner in compliance with all
applicable Laws. Borrower shall obtain Lender's prior consent to any material alterations
to the Planned Improvements.

(b)     Notwithstanding anything to the contrary herein, nothing in this
Section 4.7 shall (i) make Lender responsible for making or completing the Planned
Improvements or any other improvements to the Property or (ii) require Lender to expend
any funds to make or complete the Planned Improvements.

4.8     Notice of Certain Events.  Borrower shall promptly and in any event
within three (3) days give notice to Lender of any (a) any threatened or pending legal,
judicial or regulatory proceedings affecting Borrower and/or the Property, including any
dispute between Borrower and any Governmental Authority, and (b) written or oral
notice received from any Governmental Authority with respect to any failure to comply
with any applicable Law by which Borrower or the Property is bound.

4.9     Accuracy of Representations and Warranties.  Borrower shall ensure that
all representations and warranties remain true, accurate and complete at all times.

4.10    No Occupancy.  Neither Borrower nor Guarantor shall, or shall permit any
other person to, occupy the Property.

11

4.11   Costs and Expenses.  Borrower shall reimburse Lender within ten (10) days after demand for all out-of-pocket fees, costs and expenses paid or incurred by Lender in connection with the negotiation, preparation and execution of this Agreement and the other Loan Documents (and any amendments, approvals, consents, waivers and releases requested, required, proposed or done from time to time), or in connection with the disbursement, administration or collection of the Loan including (a) all fees and expenses of counsel; (b) fees and charges of each construction consultant, inspector and engineer; (c) appraisal, including any Appraisal, re-appraisal and survey costs; (d) title insurance charges and premiums; (e) title search or examination costs, including abstracts, abstractors' certificates and Uniform Commercial Code searches; (f) judgment and tax lien searches for Borrower and each Guarantor; (g) escrow fees; (h) fees and costs of environmental investigations, site assessments and remediations; (i) recordation taxes, documentary taxes, transfer taxes and mortgage taxes; and (j) filing and recording fees.  At Lender's option, Borrower shall be obligated to advance fees, costs and expenses to be incurred by Lender and/or Lender may net any incurred or to-be-incurred fees, costs and expenses against any Advance.

4.12   Further Assurances.  Borrower shall promptly, (i) cure any defects in the execution and delivery of the Loan Documents, (ii) deliver an estoppel certificate to Lender, in form and substance and at such times, as Lender requests and (iii) execute and deliver, or cause to be executed and delivered, all such other documents, agreements and instruments as Lender may reasonably request to further evidence and more fully describe the collateral for the Loan, to correct any omissions in the Loan Documents, to perfect, protect or preserve any liens created under any of the Loan Documents, or to make any recordings, file any notices, or obtain any consents, as may be necessary or appropriate in connection therewith.

4.13   Indemnification.  Borrower shall indemnify, defend and hold harmless Lender and its affiliates and their respective owners, members, managers, officers, directors, managers, agents, employees, trustees, partners, successors and permitted assigns from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever, including the reasonable fees and actual expenses of Lender's counsel, arising from or in connection with (i) the Loan; (ii) any failure to complete the Planned Improvements in accordance with applicable Law; (iii) any inaccuracy in or breach of any representation or warranty made by Borrower in this Agreement or any other Loan Documents; (iv) any failure of Borrower to perform any of its agreements, duties or obligations in accordance with the terms of this Agreement or any other Loan Document; (v) any investigative, administrative, mediation, arbitration, or judicial proceeding, whether or not Lender is designated a party thereto, commenced or threatened at any time (including after the repayment of the Loan) in any way related to the execution, delivery or performance of any Loan Document; (vi) any acts by Lender pursuant to Section 4.7 and Section 6.3, including all sums paid by Lender or otherwise expended thereunder; and (vii) any brokerage commissions or finder's fees claimed by any broker or other party in connection with the Loan or any of the transactions contemplated in the Loan Documents.

12

4.14 Insurance.

(a) Borrower shall at all times keep (and/or, as noted below, shall cause its general contractor, if any, to keep), in full force and effect the following policies of insurance with respect to the Property:

(i) All risk insurance in an amount equal to 100% of the full replacement cost of the improvements, including, an "increased cost of construction endorsement" and an "agreed amount endorsement," covering the perils of fire, flood (if in a flood hazard zone), earthquakes (if in an earthquake zone and the PML exceeds 20%), and such other perils as Lender may require, without deduction for physical depreciation;

(ii) Commercial general liability insurance with coverage at least as broad as ISO Form CG 00 01 10 93, insuring against claims for bodily injury (including death), property damage, personal injury, negligent supervision liability, and advertising liability occurring upon the Property or operations incidental or necessary thereto located in or on the Property, such insurance to afford protection in an amount not less than $1,000,000.00 per occurrence and in the aggregate; provided that such liability insurance shall also be carried by Borrower's general contractor, if any;

(iii) At all times during which construction, repairs or alterations are being made (A) commercial general liability and excess and/or umbrella liability insurance covering claims related to the construction, repairs or alterations being made which are not covered by or under the terms or provisions of the insurance provided for in Section 4.14(a)(ii); and (B) the insurance provided for in Section 4.14(a)(i) shall be written in a so-called builder's risk completed value form, including coverage for 100% of the total cost of construction (1) on a non-reporting basis, (2) against all perils required to be insured against pursuant to this Section 4.14(a), (3) shall include permission to occupy the Property, and (4) shall contain an agreed amount endorsement waiving co-insurance provisions; provided that, such builder's risk insurance may be carried by Borrower's general contractor, if any, in lieu of Borrower;

(iv) Workers' compensation, subject to the statutory limits of the State in which the Property is located, and employer's liability insurance with a limit of at least $1,000,000.00 per accident and per disease per employee, and $1,000,000.00 for disease aggregate in respect of any work or operations on or about the Property, or in connection with the Property or its operation (if applicable); provided that such workers' compensation insurance may be carried by Borrower's general contractor, if any, in lieu of Borrower;

(v) Automobile liability coverage for all owned and non-owned vehicles, including rented and leased vehicles containing minimum limits per occurrence of $1,000,000.00 (if applicable); provided that such automobile coverage shall also be carried by Borrower's general contractor, if any and if applicable; and

(vi) Such other insurance and in such amounts or as Lender from time to time may reasonably request against such other insurable hazards which at the time

13

are commonly insured against for property similar to the Property located in or around the region in which the Property is located.

    (b)    All policies shall:

    (i)    be issued by a company or companies satisfying either of the following: (x) if rated by the Best Company, Inc. either (1) a B or better Financial Strength Rating in Best's Insurance Reports or (2) an A or better Financial Strength Rating and a Financial Size Category of VIII or greater in Best's Insurance Reports non-U.S. Edition or (y) if rated by Standard and Poor's, a BBB or better Financial Strength Rating in Standard and Poor's Ratings Direct Insurance Service;

    (ii)    not contain a co-insurance clause or other clause limiting the amount of coverage under any conditions;

    (iii)    name Lender an additional insured as to liability coverage;

    (iv)    contain a Non-Contributory Standard Mortgagee Clause and the Lender's Loss Payable Endorsement (Form 438 BFU NS), or equivalent, in favor of Lender;

    (v)    provide a minimum of 30 days' written notice to Lender prior to any modification, termination, cancellation or non-renewal (and a 10 day notification for cancellation because of non-payment of premium);

    (vi)    provide for deductibles acceptable to Lender; and

    (vii)    be satisfactory to Lender in all other respects.

    (c)    Certified copies of the policies of insurance required herein, and original Acord 27 (Acord 28, if available) and Acord 25 (as to liability and excess liability only) certificates evidencing the insurance required herein shall be provided to Lender. In the event Borrower shall fail to maintain the insurance required by this section and such failure continues for a period of ten (10) days after notice thereof from Lender (or Lender's designated servicer), Lender may, but shall not be so obligated, procure such insurance as Lender shall deem necessary, and any amount so expended by Lender shall be secured by the Security Instrument and be repayable by Borrower upon demand, with interest at the Default Rate.

    (d)    In the event of any damage or destruction to the Property, Borrower shall promptly make proof of loss to the insurers and Lender. Borrower shall not adjust or compromise any claim under such insurance without the prior approval of Lender. All proceeds of such insurance shall be paid directly to Lender, and each insurer is hereby authorized and directed to make such payment directly to Lender. Any proceeds shall be applied first to the payment of all costs and expenses incurred by Lender in obtaining such proceeds. The balance of the proceeds, if any, shall be applied in accordance with the provisions of Article VII (Casualty and Condemnation).

14

4.15    Estoppel Statement.   After request by Lender, Borrower shall within ten
(10) days furnish Lender with a statement, duly acknowledged and certified, setting forth
(i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount
of the Note, (iii) the Interest Rate, (iv) the date installments of interest and/or principal
were last paid, (v) any offsets or defenses to the payment of the Debt, (vi) that the Note,
this Agreement, the Security Instrument and the other Loan Documents are valid, legal and
binding obligations and have not been modified or if modified, giving particulars of such
modification and (vii) such other matters as Lender may request.

4.16    No Debt.

(a)    Borrower shall not incur any indebtedness other than Subordinated
Debt. "Subordinated Debt" means debt that is subordinate and junior in right of payment
to the prior payment in full of all Debt.  From and after the occurrence of an Event of
Default, if any sums shall be paid by Borrower to any  person or entity on account of
Subordinated Debt, such sums shall be deemed held in trust for the benefit of Lender and
shall forthwith be paid to Lender For purposes of this Section 4.16, the term "indebtedness"
means all debt, liabilities, and obligations of Borrower, whether such debt, liabilities, and
obligations now exist or are hereafter incurred or arise, or whether the obligations of
Borrower thereon are direct, indirect, contingent, primary, secondary, several, joint and
several, or otherwise, and irrespective of whether such debt, liabilities, or obligations are
evidenced by a note, contract, open account, or otherwise.

(b)    Any and all liens, security interests, judgment liens, charges, or
other encumbrances upon Borrower's assets securing payment of any Subordinated Debt
shall be and remain inferior and subordinate to any and all liens, security interests,
judgment liens, charges, or other encumbrances upon Borrower's assets securing payment
of the Debt or any part thereof, regardless of whether such encumbrances in favor of the
holder of the Subordinated Debt or Lender presently exist or are hereafter created or
attached. Borrower shall inform the obligee of any potential Debt of the provisions of this
Section 4.16 prior to effectuating such Debt.

4.17    Environmental Matters.

(a)    "Hazardous Substances" are those substances defined as toxic or
hazardous substances, pollutants or wastes by Environmental Law and the following
substances, if not otherwise included: gasoline, kerosene, other flammable or toxic
petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing
asbestos or formaldehyde, and radioactive materials; "Environmental Law" is Law that
relates to health, safety or environmental protection; "Environmental Cleanup" includes
any response action, remedial action or removal action as defined in Environmental Law;
and an "Environmental Condition" means a condition that can cause, contribute to, or
otherwise trigger an Environmental Cleanup.

(b)    Borrower represents and warrants to Lender that there is no pending
action or proceeding involving the Property in which compliance with any Environmental
Law is an issue. To the Borrower's and Guarantor's knowledge, there is no past or present

15

non-compliance with Environmental Law or presence on the Property or in the immediate vicinity of the Property of any Hazardous Substances.

(c)     Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (i) that is in violation of any Environmental Law, (ii) which creates an Environmental Condition or (iii) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

(d)     Borrower shall promptly give Lender notice of (i) any investigation, claim, demand, lawsuit or other action by any Governmental Authority or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has knowledge, (ii) any Environmental Condition, including any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (iii) any condition caused by the presence, use or release of a Hazardous Substance which affects the Property. If Borrower learns, or is notified by any Governmental Authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

(e)     The obligations of Borrower in this Section 4.17 are supplemental to any obligations relating to Hazardous Substances and Environmental Law set forth elsewhere in this Agreement or in any other Loan Agreement.

## ARTICLE 5
## EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default under the Loan:

5.1     Payments. Borrower's failure to pay any principal, interest or other amount due under the Loan Documents when due.

5.2     Sale, Encumbrance. Borrower's violation of its obligations under Sections 4.1 and/or 4.2 of this Agreement.

5.3     Covenants. Borrower's failure to perform or observe any of the agreements and covenants contained in this Agreement not otherwise covered by an Event of Default in this Article 5 or in any of the other Loan Documents and the continuance of such failure for ten (10) Business Days after notice by Lender to Borrower.

5.4     Representations and Warranties. Any representation or warranty made in any Loan Document proves to be untrue in any material respect when made or deemed made.

16

5.5 Involuntary Bankruptcy or Other Proceeding. Commencement of an involuntary case or other proceeding against Borrower or Guarantor which seeks liquidation, reorganization or other relief with respect to it or its debt or other liabilities under any bankruptcy, insolvency or other similar Law now or hereafter in effect or seeks the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any of its property, and such involuntary case or other proceeding shall remain undismissed or unstayed for a period of sixty (60) days; or an order for relief against Borrower or Guarantor shall be entered in any such case under the Federal bankruptcy code.

5.6 Voluntary Bankruptcy. Commencement by Borrower or Guarantor of a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts or other liabilities under any bankruptcy, insolvency or other similar Law or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official for it or any of its property, or consent by Borrower or Guarantor to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it, or the making by Borrower or Guarantor of a general assignment for the benefit of creditors, or the failure by Borrower or Guarantor, or the admission by Borrower or Guarantor in writing of its inability, to pay its debts generally as they become due, or any action by Borrower or Guarantor to authorize or effect any of the foregoing.

5.7 Other Obligations. Default beyond any applicable notice and/or cure period by Borrower or Guarantor or any of their Affiliates under any financing or other arrangement with Lender or any of its Affiliates.

## ARTICLE 6
## REMEDIES

6.1 Remedies - Insolvency Events. Upon the occurrence of any Event of Default described in Section 5.5 or Section 5.6 of this Agreement, the obligations of Lender to advance amounts hereunder shall immediately terminate, and all amounts due under the Loan Documents immediately shall become due and payable, all without presentment, demand, protest, notice of protest or dishonor, notice of intent to accelerate the maturity thereof, notice of acceleration of the maturity thereof, or any other notice of default of any kind, all of which are hereby expressly waived by Borrower.

6.2 Remedies - Other Events. While any Event of Default exists, Lender may (i) declare the entire Loan to be immediately due and payable without presentment, demand, protest, notice of protest or dishonor, notice of intent to accelerate the maturity thereof, notice of acceleration of the maturity thereof, or other notice of default of any kind, all of which are hereby expressly waived by Borrower; (ii) terminate the obligation, if any, of Lender to advance amounts hereunder; or (iii) exercise all rights and remedies therefor under the Loan Documents and at Law or in equity, including foreclosure on and/or the power of sale of the Property.

17

6.3    Lender's Right to Perform the Obligations. If Borrower shall fail, refuse
or neglect to make any payment or perform any act required by the Loan Documents,
without notice to or demand upon Borrower and without waiving or releasing any other
right, remedy or recourse Lender may have because of such Default, Lender may (but
shall not be obligated to) make such payment or perform such act for the account of and
at the expense of Borrower and to take all such action as it may deem necessary or
appropriate. If Lender shall elect to pay any sum due, Lender may do so in reliance on
any bill, statement or assessment procured from the appropriate Governmental Authority
or other issuer thereof without inquiring into the accuracy or validity thereof. Similarly,
in making any payments to protect the security intended to be created by the Loan
Documents, Lender shall not be bound to inquire into the validity of any apparent or
threatened adverse title, lien, encumbrance, claim or charge before making an advance
for the purpose of preventing or removing the same. In furtherance and not in limitation
of the foregoing, Borrower hereby constitutes and appoints Lender its true and lawful
attorney-in-fact with full power and authority to execute such instruments and to do and
perform all and every act and thing necessary and proper to carry into effect the purposes
of this Section 6.3 and protect Lender's interest in the Property.

6.4    Reimbursement of Expenses. Borrower shall upon request reimburse
Lender for all amounts expended, advanced or incurred by Lender to collect the Note, or
to enforce the rights of Lender under this Agreement or any other Loan Document,
including as contemplated by Section 6.3, or to defend or assert the rights and claims of
Lender under the Loan Documents (by litigation or other proceedings), which amounts
will include all court costs, reasonable attorneys' fees (whether incurred at the trial or
appellate level, in an arbitration proceeding, in bankruptcy (including, without limitation,
any adversary proceeding, contested matter or motion) or otherwise) and expenses, fees
of auditors and accountants, and investigation expenses as may be incurred by Lender in
connection with any such matters (whether or not litigation is instituted), together with
interest at the Default Rate on each such amount from the date of disbursement until the
date of reimbursement to Lender, all of which shall constitute part of the Loan and shall
be evidenced and secured by the Loan Documents. Borrower shall be responsible for all
taxes, costs and expenses associated with recording the Security Instrument and filing
any financing statement, and the premium and costs of the Title Policy (including all
endorsements thereto); provided that Lender hereby agrees to pay the same on
Borrower's behalf and all such amounts paid by Lender shall be reimbursed by Borrower.

6.5    Inspections. Lender shall have the right at any time, upon reasonable prior
notice to Borrower, to enter upon the Property for the purpose of inspecting the same or
to exercise any of its rights and remedies under the Loan Documents.

## ARTICLE 7
## CONDEMNATION/CASUALTY

7.1    Casualty. If the Property shall be damaged or destroyed, in whole or in part,
by fire or other casualty (a "Casualty"), Borrower shall give prompt notice of such damage
to Lender and shall promptly commence and diligently prosecute the "Restoration", i.e.,
the repair and restoration of the Property as nearly as possible to the condition the Property

18

was in immediately prior to the applicable Casualty or Condemnation, together with the Planned Improvements, whether or not previously constructed, with such alterations as may be approved by Lender and otherwise in accordance with Section 7.3. Borrower shall pay all costs of such Restoration whether or not such costs are covered by insurance. Lender may, but shall not be obligated to, make proof of loss if not made promptly by Borrower.

7.2   Condemnation.

(a)   Borrower shall promptly give Lender notice of the actual or threatened commencement of any proceeding for the Condemnation of all or any part of the Property and deliver to Lender copies of any and all papers served in connection with such proceedings. Lender may participate in any such proceedings, and Borrower shall from time to time deliver to Lender all instruments requested by it to permit such participation. Borrower shall, at its expense, diligently prosecute any such proceedings, and shall consult with Lender, its attorneys and experts, and cooperate with them in the carrying on or defense of any such proceedings. Notwithstanding any taking by any public or quasi-public authority through Condemnation or otherwise (including any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay the Debt at the time and in the manner provided for in the Note and in this Agreement and the Debt shall not be reduced until any Condemnation award shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Lender shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein or in the Note. If the Property or any portion thereof is taken by a condemning authority, Borrower shall promptly commence and diligently prosecute the Restoration of the Property and otherwise comply with the provisions of Section 7.3. If the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the award, Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive the award, or a portion thereof sufficient to pay the Debt.

(b)   Notwithstanding the foregoing provisions of this Section 7.2 and Section 7.3, if, immediately following a release of any portion of the lien of the Security Instrument following a Condemnation (but taking into account any proposed Restoration on the remaining Property), the ratio of the unpaid principal balance of the Loan to the value of the remaining Property is greater than 65% (such value to be determined in Lender's sole discretion), the principal balance of the Loan must be prepaid by an amount necessary so that such ratio is no greater than 65%.

7.3   Restoration. The following provisions shall apply in connection with the Restoration of the Property:

(a)   Borrower's right, title and interest in and to all Net Proceeds are hereby assigned by Borrower to Lender and all Net Proceeds shall be paid to Lender. Lender shall make the Net Proceeds available for the Restoration, or apply the Net Proceeds to the Debt, in accordance with the provisions of this Section 7.3. The term "Net Proceeds"

19

means: (i) the net amount of all insurance proceeds received by Lender pursuant to Section 4.14 as a result of such damage or destruction, after deduction of its reasonable costs and expenses (including reasonable counsel fees), if any, in collecting same ("Insurance Proceeds"), or (ii) the net amount of the award, after deduction of its reasonable costs and expenses (including reasonable counsel fees), if any, in collecting same ("Condemnation Proceeds"), whichever the case may be.

(viii) The Net Proceeds shall be made available to Borrower for Restoration provided that each of the following conditions are met, as determined by Lender:

A. no Default or Event of Default shall have occurred and be continuing;

B. (1) in the event of a Casualty, less than forty percent (40%) of the total floor area of the improvements on the Property has been damaged, destroyed or rendered unusable as a result of such Casualty, (2) in the event of a Condemnation, less than ten percent (10%) of the land constituting the Property is taken, such land is located along the perimeter or periphery of the Property, and no portion of the improvements or the Property access, including any driveway, is located on such land, or (3) in the event of a Casualty or Condemnation, the costs of Restoration are less than Ten percent (10%) of the then face amount of the Note;

C. Borrower shall commence the Restoration as soon as reasonably practicable (but in no event later than thirty (30) days after such Casualty or Condemnation occurs) and shall diligently pursue the same to satisfactory completion in compliance with all applicable Laws;

D. Lender shall be satisfied that the Restoration will be completed on or before the earliest to occur of (1) thirty (30) days prior to the Maturity Date, (2) six (6) months after the occurrence of such Casualty or Condemnation, or (3) such time as may be required under Applicable Law in order to repair and restore the Property to the condition it was in immediately prior to such Casualty or Condemnation;

E. the Property and the use thereof after the Restoration will be in compliance with all applicable Laws;

F. Borrower shall deliver to Lender a detailed budget setting forth in detail the entire cost of completing the Restoration, which budget shall be acceptable to Lender;

G. the Net Proceeds, together with any cash deposited by Borrower with Lender, are sufficient to cover the cost of the Restoration; and

(ix) The Net Proceeds shall be held by Lender and, until disbursed in accordance with the provisions of this Section 7.3, shall constitute additional security for the Debt and other obligations under the Loan Documents. The Net Proceeds shall be disbursed by Lender to, or as directed by, Borrower from time to time during the

20

Case 19-20181 Doc 8 Filed 01/17/19 Entered 01/17/19 14:11:08 Desc Main
Document Page 53 of 70

course of the Restoration, but not more often than once a month upon receipt of evidence satisfactory to Lender that (A) all materials installed and work and labor performed (except to the extent that they are to be paid for out of the requested disbursement) in connection with the Restoration have been paid for in full, and (B) there exist no notices of pendency, stop orders, mechanic's or materialman's liens or notices of intention to file same, or any other liens or encumbrances of any nature whatsoever on the Property which have not fully bonded to the satisfaction of Lender and discharged of record.

(x) All plans and specifications required in connection with the Restoration shall be subject to prior review and approval in all respects by Lender and the Inspection Agent. Lender shall have the use of the plans and specifications and all Licenses required or obtained in connection with the Restoration. All costs and expenses incurred by Lender in connection with making the Net Proceeds available for the Restoration, including reasonable counsel fees and disbursements, and the Inspection Agent's fees, shall be paid by Borrower.

(xi) In no event shall Lender be obligated to make disbursements of the Net Proceeds in excess of an amount equal to the costs actually incurred from time to time for work in place as part of the Restoration, as certified by the Inspection Agent, minus an amount equal to ten percent (10%) of the costs actually incurred (such amount, "the Casualty Retainage"). The Casualty Retainage shall in no event be less than the amount actually held back by Borrower from contractors, subcontractors and materialmen engaged in the Restoration. Without limiting the other conditions for the release of Net Proceeds, the Casualty Retainage shall not be released until the Inspection Agent certifies to Lender that the Restoration has been completed in accordance with the provisions of this Section 7.3 and that all approvals necessary for the occupancy and use of the Property as a personal residence, including any certificate of occupancy, have been obtained from all appropriate Governmental Authorities, and Lender receives evidence satisfactory to Lender that the costs of the Restoration have been paid in full or will be paid in full out of the Casualty Retainage;

(xii) Lender shall not be obligated to make disbursements of the Net Proceeds more frequently than once every calendar month.

(xiii) If at any time the Net Proceeds or the undisbursed balance thereof, shall not, in the opinion of Lender, be sufficient to pay in full the balance of the costs which are estimated by Lender or, at Lender's direction, the Inspection Agent to be incurred in connection with the completion of the Restoration, Borrower shall deposit the deficiency (the "Net Proceeds Deficiency") with Lender before any further disbursement of the Net Proceeds shall be made. The Net Proceeds Deficiency deposited with Lender shall be held by Lender and shall be disbursed for costs actually incurred in connection with the Restoration on the same conditions applicable to the disbursement of the Net Proceeds, and until so disbursed pursuant to this Section 7.3 shall constitute additional security for the Debt and other obligations under the Loan Documents.

(xiv) The excess, if any, of the Net Proceeds and the remaining balance, if any, of the Net Proceeds Deficiency deposited with Lender after the Inspection

21

Agent certifies to Lender that the Restoration has been completed in accordance with the provisions of this Section 7.3, and the receipt by Lender of evidence satisfactory to Lender that all costs incurred in connection with the Restoration have been paid in full, shall be remitted by Lender to Borrower, provided no Default or Event of Default shall have occurred and be continuing.

(b)      All Net Proceeds not required (i) to be made available for the Restoration or (ii) to be returned to Borrower as excess Net Proceeds pursuant to Section 7.3(a)(vii) may be retained and applied by Lender toward payment of the Debt whether or not then due and payable in such order, priority and proportions as Lender in its sole discretion shall deem proper. If Lender shall receive and retain Net Proceeds, the lien of the Security Instrument shall be reduced only by the amount thereof received and retained by Lender and actually applied by Lender in reduction of the Debt.

## ARTICLE 8
## MISCELLANEOUS

8.1      Notices. Any notice, request, statement, consent, waiver or demand required or permitted to be given under this Agreement shall be in writing and either shall be sent by overnight air courier service, registered mail (postage prepaid, return receipt requested) or personally delivered to a representative of the receiving party, or sent by telecopy (provided an identical notice is also sent simultaneously by mail, overnight courier, or personal delivery as otherwise provided in this Section 8.1). All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

If to Borrower:      KJM Investments LLC
35 West Center Street, #444
Midvale, Utah 84047
Attn: Mary Anne Munzert
Tel: 801-831-9792
Email: kraig1776@gmail.com

If to Lender:      Black Square Real Estate, Inc.
807 East South Temple, Suite 200
Salt Lake City, Utah 84102
P.O. Box 3390
Salt Lake City, Utah 84110
Attn: Paul T. Basmajian
Attn: Shawn K. Whetten
Tel: 801.364.4375
Email: paul@blksq.com
Email: swhetten@blksq.com

Any communication so addressed and mailed shall be deemed to be given on the earliest of (i) when actually delivered, (ii) on the second business day after deposit with an overnight air courier service, or (iii) in the case of registered mail on the third day following

22

the day on which it was mailed and any communication so delivered in person shall be deemed to be given when receipted for by, or actually received by Lender or Borrower, as the case may be. If given by facsimile, a notice shall be deemed given and received when the facsimile is transmitted to the party's facsimile number specified above, and confirmation of complete receipt is received by the transmitting party during normal business hours or on the next business day if not confirmed during normal business hours, and an identical notice is also sent simultaneously by mail, overnight courier, registered mail or personal delivery as otherwise provided in this Section 8.1. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

8.2     Appointment of Agent. Lender hereby appoints and authorizes the Servicer to act as its agent hereunder and, as applicable, under the other Loan Documents, such authorization to include the sending of and receipt of notices to and from Borrower, the receipt of payments hereunder (unless another person is designated by Lender pursuant to Section 2.3(f)) and for such other purposes as Lender may designate from time to time.

8.3     Amendments and Waivers. No amendment or waiver of any provision of the Loan Documents shall be effective unless in writing and signed by the party against whom enforcement is sought.

8.4     Limitation on Interest. It is the intention of the parties hereto to conform strictly to applicable usury Laws. Accordingly, all agreements between Borrower and Lender with respect to the Loan are hereby expressly limited so that in no event, whether by reason of acceleration of maturity or otherwise, shall the amount paid or agreed to be paid to Lender or charged by Lender for the use, forbearance or detention of the money to be lent hereunder or otherwise, exceed the maximum amount allowed by Law. If the Loan would be usurious under applicable Law, including the Laws of the state where the Property is located, then, notwithstanding anything to the contrary in the Loan Documents: (i) the aggregate of all consideration which constitutes interest under applicable Law that is contracted for, taken, reserved, charged or received under the Loan Documents shall under no circumstances exceed the maximum amount of interest allowed by applicable Law, and any excess shall be credited on the Note by the holder thereof (or, if the Note has been paid in full, refunded to Borrower); and (ii) if maturity is accelerated by reason of an election by Lender, or in the event of any prepayment, then any consideration which constitutes interest may never include more than the maximum amount allowed by applicable Law. In such case, excess interest, if any, provided for in the Loan Documents or otherwise, to the extent permitted by applicable Law, shall be amortized, prorated, allocated and spread from the date of advance until payment in full so that the actual rate of interest is uniform through the term hereof. If such amortization, proration, allocation and spreading is not permitted under applicable Law, then such excess interest shall be cancelled automatically as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited on the Note (or, if the Note has been paid in full, refunded to Borrower). The terms and provisions of this Section shall control and supersede every other provision of the Loan Documents. The Loan Documents are contracts made under and shall be construed in accordance with and

23

governed by the laws of the State of Utah, except that if at any time the laws of the
United States of America permit Lender to contract for, take, reserve, charge or receive a
higher rate of interest than is allowed by the laws of the State of Utah (whether such
federal laws directly so provide or refer to the law of any state), then such federal laws
shall to such extent govern as to the rate of interest which Lender may contract for, take,
reserve, charge or receive under the Loan Documents.

        8.5    Invalid Provisions. If any provision of any Loan Document is held to be
illegal, invalid or unenforceable, such provision shall be fully severable; the Loan
Documents shall be construed and enforced as if such illegal, invalid or unenforceable
provision had never comprised a part thereof; the remaining provisions thereof shall
remain in full effect and shall not be affected by the illegal, invalid, or unenforceable
provision or by its severance therefrom; and in lieu of such illegal, invalid or
unenforceable provision there shall be added automatically as a part of such Loan
Document a provision as similar in terms to such illegal, invalid or unenforceable
provision as may be possible to be legal, valid and enforceable.

        8.6    Lender Not in Control; No Partnership. None of the covenants or other
provisions contained in this Agreement shall, or shall be deemed to, give Lender the right
or power to exercise control over the affairs or management of Borrower, the power of
Lender being limited to the rights to exercise the remedies referred to in the Loan
Documents. The relationship between Borrower and Lender is, and at all times shall
remain, solely that of debtor and creditor. No covenant or provision of the Loan
Documents is intended, nor shall it be deemed or construed, to create a partnership, joint
venture, agency or common interest in profits or income between Lender and Borrower.
Lender neither undertakes nor assumes any responsibility or duty to Borrower or any
other Person with respect to the Loan, except as expressly provided in the Loan
Documents.

        8.7    Time of the Essence. Time is of the essence with respect to Borrower's
obligations under the Loan Documents.

        8.8    Successors and Assigns. This Agreement shall be binding upon Lender
and Borrower and the respective successors and assigns of Lender and Borrower, and
shall inure to the benefit of Lender and its successors and assigns and Borrower and its
permitted successors and assigns. Borrower shall not, without Lender's prior consent,
assign or transfer this Agreement or any of the Loan Documents. Nothing in this
Agreement shall limit Lender's (including its successors and assigns) right to sell or
transfer the Loan or any interest in the Loan one or more times without notice to
Borrower.

        8.9    Waivers. No course of dealing on the part of Lender, its officers,
employees, consultants or agents, nor any failure or delay by Lender with respect to
exercising any right, power or privilege of Lender under any of the Loan Documents,
shall operate as a waiver thereof.

8.10   Cumulative Rights. The rights and remedies of Lender under the Loan Documents shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

8.11   Titles of Articles, Sections and Subsections. All titles or headings to articles, sections, subsections or other divisions of this Agreement and the other Loan Documents or the exhibits hereto and thereto are only for the convenience of the parties and shall not be construed to have any effect or meaning with respect to the other content of such articles, sections, subsections or other divisions, such other content being controlling as to the agreement between the parties hereto.

8.12   Forum. Borrower hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any state/local court, or any United States federal court, sitting in the State of New York, or any other forum selected by Lender, over any suit, action or proceeding arising out of or relating to this Agreement. Borrower hereby irrevocably waives, to the fullest extent permitted by Law, any objection that Borrower may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum. Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable Law, all service of process in any such suit, action or proceeding in any state court, or any United States federal court, sitting in the State of New York, or such other state as Lender may select, may be made by certified or registered mail, return receipt requested, directed to Borrower at Borrower's address for notice set forth in Section 8.1 of this Agreement, and service so made shall be complete five (5) days after the same shall have been so mailed. Nothing herein shall affect the right of Lender to serve process in any manner permitted by Law or limit the right of Lender to bring proceedings against Borrower in any other court or jurisdiction.

8.13   Survival. All of the representations, warranties, covenants and indemnities hereunder, and under the indemnification provisions of the other Loan Documents, shall survive the repayment in full of the Loan and the release of the liens evidencing or securing the Loan.

8.14   Waiver of Jury Trial. To the maximum extent permitted by Law, Borrower and Lender, hereby knowingly, voluntarily and intentionally waive the right to a trial by jury in respect of any litigation based hereon, arising out of, under or in connection with this Agreement or any other Loan Document, or any course of conduct, course of dealing, statement (whether verbal or written) or action of either party or any exercise by any party of their respective rights under the Loan Documents or in any way relating to the Loan (including, without limitation, any action to rescind or cancel this Agreement, and any claim or defense asserting that this Agreement was fraudulently induced or is otherwise void or voidable). This waiver is a material inducement for Lender to enter this Agreement.

8.15   Governing Law. The Loan Documents are being delivered, and are intended to be performed, in the State of New York and the laws of the State of New York and of the United States of America shall govern the rights and duties of the parties

25

hereto and the validity, construction, enforcement and interpretation of the Loan Documents, provided, however, that with respect to the creation, perfection, priority and enforcement of the liens and security interests created by this Agreement, the Security Instrument and the other Loan Documents, and the determination of deficiency judgments, the Laws of the State where the Property is located shall apply.

8.16   Entire Agreement. This Agreement and the other Loan Documents embody the entire agreement and understanding between Lender and Borrower and supersede all prior agreements and understandings between such parties relating to the subject matter hereof and thereof. Accordingly, the Loan Documents may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

8.17   Use of Name. Borrower shall not, nor shall it permit or authorize any of its affiliates, agents or representatives to, use Lender's name or any variation thereof in connection with its or Guarantor's business.

8.18   Counterparts. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

[signature page follows]

26

This Loan Agreement is executed as of the date first written above.

BORROWER:      KJM Investments, LLC
a Utah limited liability company

By: _____
Name: Kraig Munzert
Its: Manager

LENDER:        Black Square Real Estate, Inc.,
a Delaware corporation

By: _____
Name: _____
Its: Officer

## Schedule 2.3(f)

Your first payment is due March 1, 2018.  Your Monthly payment is $1,491.67.
Servicing for the loan agreement shall be carried out by Statebridge Company LLC. Any
questions regarding servicing should be directed at the address below:

Statebridge Company LLC
Attn: Payment Processing
P.O. Box 5990
Denver, CO 80217-5990
866-466-3360

Website: http://www.statebridgecompany.com/

## Schedule 3.1



## Exhibit A

Planned Improvements

[INSERT REHABILITATION ESTIMATE]



| Borrower: | KJM Investments LLC |
|---|---|
| Subject Property Address: | 8061 Allen St Midvale UT 84047 |

**Contact to gain access to the property**

| Contact Name: | Kraig Munzert |
|---|---|
| Phone Number: | ███████████ |
| Property Vacant? | |

| Contractor Name: | N/A (Barrower manage remodel) |
|---|---|
| Contractor Address: | |

**Scope of Work Summary (*Required)**

*Adding square footage, horizontal or vertical addition, changing the layout, quality of work/materials, etc...

1. Remodel of unfinished basement. This will double living space from 980 to 1960 sq ft. Four new rooms will be created: an additional bedroom, a full bath, a laundry, and a family room. Note remodel will also include the addition of exterior entrance and radiant heat in new bedroom and bath.

2. Remodel of main floor using existing floor plan. Work on the main floor will included: a.) Interior Paint - all interior walls and ceilings. b.)Flooring - new carpet in both bedrooms, new vinyl in kitchen & hallway, and refinish original hardwood in living room & dining room. c.)Kitchen - refurbish existing counter and cabinets and add an additional six feet of matching counter and cabinets.

3. Landscaping & Exterior. General clean up and maintenance which will include: a.) Trim shrubs & reseed lawn. b.) Clean up and haul away trash. c.) Fence in front yard and repair fence in back. d.)Fix & paint garage door.

| Final Sqft: | 1960 |
|---|---|
| Final Bed Count: | 3 |
| Final Bath Count: | 2 |

*Misc. and Misc./Unknown fields must include a description of work to be approved
**Please round all amounts to the nearest dollar
***Do NOT change or add line item descriptions

| Item Number | Description | Total Cost | Notes |
|---|---|---|---|
| | **Soft Costs** | | |
| 10001 | Plans/Engineering | | |
| 10002 | Building Permits | 500 | |
| 10003 | Legal/Condo Maps | | |
| 10004 | Termite Treatment | | |
| 10005 | Mold Abatement | | |
| 10006 | Interior Design | | |
| 20 | Misc. | | |
| 21 | Misc. | | |
| 22 | Misc. | | |
| | **Total Soft Costs** | 500 | |
| | **Hard Costs** | | |
| | **Demo and Haul Off** | | |
| 10011 | Interior Demo | | |
| 10012 | Exterior Demo | | |
| 10013 | Dumpster/Roll-Off | 1600 | |
| 10014 | Dump Visits | | |
| | **Yard** | | |
| 10015 | Landscape | 160 | Reseed lawn |
| 10016 | Irrigation | | |
| 10017 | Fence | 150 | Fenece in front yard. |
| 10018 | Concrete | | |

| Code | Item | Amount | Notes |
|---|---|---:|---|
| 10019 | Deck | | |
| 20017 | Pool / Spa | | |
| | **Exterior** | | |
| 10025 | Doors | | |
| 10026 | Windows | | |
| 10027 | Screens | | |
| 10028 | Siding | | |
| 10029 | Stucco | | |
| 10030 | Brick | | |
| 10031 | Rock Work | | |
| 10032 | Gutter/Downspouts | 425 | new gutter and down spout |
| 10033 | Roof | | |
| 10034 | Trim | | |
| 10035 | Security Doors/Bars | | |
| 10036 | Paint | | |
| 10037 | Stain | | |
| 10038 | Garage | | |
| 10039 | Garage Doors | 125 | Install new rollers and paint |
| 10040 | Driveway | | |
| | **Systems** | | |
| 10045 | Electrical Rough | 175 | lighting and outlets in new bed and bath |
| 10050 | Electrical Fixtures | 125 | |
| 10051 | Plumbing Rough | 500 | rough pumbing for radiant heat |
| 10052 | Plumbing Fixtures | 205 | |
| 10053 | Furnace | | |
| 10054 | AC | | |
| 10055 | Swamp Cooler | | |
| 10056 | Hot Water Heater | 169 | |
| 10057 | Fire Protection System | | |
| 10058 | Sewer | | |
| | **Interior** | | |
| 10061 | Insulation | 125 | Insulation on basment walls |
| 10062 | Framing Materials | 3113 | Basment walls |
| 10063 | Frame Labor | 0 | |
| 10064 | Drywall Materials | 1378 | Basment walls |
| 10065 | Drywall Labor | 0 | |
| 10066 | Patch & Mud | | |
| 10067 | Base & Molding | 315 | |
| 10068 | Carpentry/Trim | 399 | 4 |
| 10069 | Hardware | 150 | |
| 10070 | Doors | 250 | |
| 10071 | Fireplace | | |
| 10072 | Blinds | | |
| 10073 | Window Coverings | | |
| 10074 | Paint | 1490 | Main floor and basment |
| 10075 | Lighting | 340 | |
| 10076 | General Labor | | |
| | **Kitchen** | | |
| 10079 | Flooring | 313 | |
| 10080 | Cabinets | 645 | |
| 10081 | Counter Tops | 600 | |
| 10082 | Sinks | | |
| 10083 | Light Fixtures | | |
| 20025 | Appliances | | |
| 10084 | Refrigerator | | |
| 10085 | Range/Oven | | |
| 10086 | Dishwasher | | |
| 10087 | Vent Hood | | |
| 10088 | OVR Microwave | | |
| 10089 | Disposal | | |
| | **Bathrooms** | | |

| 10090 | Flooring | | 161 | Ceramic tile |
|---|---|---|---|---|
| 10091 | Cabinets | | | |
| 10092 | Counter Top | | | |
| 10093 | Vanity | | 179 | |
| 10094 | Mirrors | | 220 | |
| 10095 | Tub | | | |
| 10096 | Shower | | 269 | |
| 10097 | Shower Surround | | 254 | Title suround |
| 10098 | Fixtures | | 120 | |
| 10099 | Toilet | | 280 | |
| | **Flooring** | | | |
| 20000 | Tile | | | |
| 20001 | Carpet | | 200 | Replace Carpet in existing bed rooms |
| 20002 | Vinyl | | 468 | Material already purchased - we provide |
| 20003 | Hardwood | | | |
| 20004 | Hardwood Refinish | | 592 | Refinish 372 sq. ft |
| 20011 | Foundation | | | |
| 20014 | Cleaning | | | |
| 20016 | Misc./Unknown | | 1600 | Install Basment Entrance |
| | **Total Hard Costs** | 17095 | | |
| | Sub-Total | 17595 | | |
| | **Reserves** | | | |
| Cont. | Contingency (10% of the Sub-Total) | 1760 | | |
| | **Total Reserves** | 1760 | | |
| | **Total** | 19355 | | |

Borrower Signature Mary  Muzert                Date                                    1/10/2018

Exhibit "E"



## ASSIGNMENT OF DEED OF TRUST

Recording Requested By
And When Recorded Return To:

BLACK SQUARE REAL ESTATE
P.O. BOX 3390
SALT LAKE CITY, UTAH
84110

12826549
08/09/2018 12:21 PM $12.00
Book - 10701 Pg - 3910-3911
ADAM GARDINER
RECORDER, SALT LAKE COUNTY, UTAH
BLACK SQUARE REAL ESTATE
PO BOX 3390
SLC UT 84110
BY: SSA, DEPUTY - WI 2 P.

This Space for Recorder's Use Only

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, Black Square Real Estate, Inc., with an office at 807 East South Temple, Suite 200, Salt Lake City, Utah, its successors and assigns, hereby assigns and transfers to DB RR LLC, having an office at 1345 Avenue of the Americas, 46th Floor, New York City, New York, its successors and assigns, all of its right, title and interest in and to that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture Filing executed by KJM Investments LLC, as Borrower, securing indebtedness in the original principal amount of $179,000.00, recorded on 2/15/2018 , DOCUMENT NO. 12717354 in the records of Salt Lake County, State of Utah ("Deed of Trust"). The land subject to the Deed of Trust is described on the, attached Exhibit A.

Executed as of the 20th day of February, 2018.

Black Square Real Estate, Inc.

By:
Name: Paul T. Basmajian
Title: Officer

STATE OF UTAH )
)
SS: COUNTY OF SALT LAKE )

On this, the 20th day of February, 2018, before me, a Notary Public, the undersigned officer, personally appeared Paul T. Basmajian, who acknowledged himself/herself to be the Officer of Black Square Real Estate, Inc. and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of said bank as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.



MICHAEL B BYBEE
Notary Public – State of Utah
Comm. No. 694521
My Commission Expires on
Apr 19, 2021

*Ent 12826549 BK 10701 PG 3910*

## EXHIBIT A

### Legal Description

LOT 24, BECKSTEAD SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF,
ON FILE AND OF RECORD IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.
Assessor's Parcel Number of ████████████

Exhibit "F"

U.S. Title File ███████
WHEN RECORDED MAIL TO:
KJM Investments, LLC

12717353
2/15/2018 1:30:00 PM $14.00
Book - 10647 Pg - 5260
ADAM GARDINER
Recorder, Salt Lake County, UT
US TITLE
BY: eCASH, DEPUTY - EF 1 P.

# RESPA
# WARRANTY DEED

## KRAIG MUNZERT

Grantor,

of SALT LAKE CITY , County of SALT LAKE , State of UTAH
hereby CONVEYS and WARRANTS to

## KJM Investments, LLC , A UTAH LIMITED LIABILITY COMPANY

Grantee,

of SALT LAKE CITY , County of SALT LAKE , State of UTAH , for the sum of TEN DOLLARS and other good
and valuable consideration, the following tract of land in SALT LAKE, State of UT, to-wit

**LOT 24, BECKSTEAD SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON
FILE AND OF RECORD IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.**

Subject to easements, restrictions and rights of way appearing of record and enforceable in law and subject to
2018 taxes and thereafter.

WITNESS the hand of said grantor, this ⑳ day of February, 2018



**KRAIG MUNZERT**

STATE OF UTAH          )
                       :ss
COUNTY OF SaltLake     )

On the ⑳ day of February, 2018, personally appeared before me KRAIG MUNZERT , the
signer(s) of the within instrument, who duly acknowledged to me that they executed the same.

Notary Public
BRITNEY TANNER
Commission #881252
My Commission Expires
January 28, 2019
State of Utah

Notary Public
My Commission Expires: 1/28/19
Residing at: Salt lake city, Utah

*Ent 12717353 BK 10647 PG 5260*